# Exhibit 1

*State Court Filings*

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT CIVIL ACTION NO.: _____ |
| COUNTY OF AIKEN | |

AIKEN BLVD LLC,       )
             )
   Plaintiff,      )
             )
v.            )  **SUMMONS**
             )
             )
STATE FARM FIRE AND CASUALTY )
COMPANY,        )
             )
   Defendant.     )

TO: THE ABOVE-NAMED RESPONDENT – STATE FARM INSURANCE COMPANY

   YOU ARE HEREBY SUMMONED and required to answer the Complaint

contained herein, a copy of which is herewith served upon you, and to serve a copy of your Answer to

this Complaint upon the subscriber, at the address shown below, within thirty (30) days after service

hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by

default will be rendered against you for the relief demanded in the Complaint.

           Respectfully submitted,

           **HOWARD STALLINGS LAW FIRM**

           By: /s/Brooke E. Webber
           Brooke E. Webber (State Bar No. 106810)
           5410 Trinity Road, Suite 210
           Raleigh, North Carolina 27607
           Telephone: (919) 821-7700
           E: bwebber@howardstallings.com
           *Attorney for Plaintiffs*

September 15, 2025.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT |
| COUNTY OF AIKEN | CIVIL ACTION NO.: _____ |

AIKEN BLVD LLC,                                 )
                                                )
                    Plaintiff,                  )
                                                )
v.                                              )          **COMPLAINT**
                                                )      **(JURY TRIAL DEMANDED)**
                                                )
STATE FARM FIRE AND CASUALTY                    )
COMPANY,                                        )
                                                )
                    Defendant.                  )

**NOW COMES** Plaintiff, by and through undersigned counsel, to complain of the Defendant by alleging and saying as follows:

## PARTIES

1.      Plaintiff is a domestic Limited Liability Company with its registered agent located in Aiken County, South Carolina. Plaintiff's members are Hanna Readen and her husband, Reginald ("Reggie") Parnell Rearden IV.

2.      Upon information and belief, Defendant is a corporation organized in the State of Illinois, which at all times relevant to this Complaint, was transacting substantial business and licensed to write insurance within the State of South Carolina, including Aiken County.

## JURISDICTION AND VENUE

3.      The Court has personal jurisdiction pursuant to S.C. Code Ann. § 36-2-802.

4.      Defendant has been properly served and brought before the Court pursuant to Rule 4 of the South Carolina Rules of Civil Procedure.

5.      Venue is proper in Greenville County pursuant to S.C. Code Ann. §15-7-30.

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

1

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

## FACTUAL ALLEGATIONS

6.    Plaintiff is the owner of real property located at 52 Aiken Blvd, Warrenville, South Carolina 29851 (hereinafter, the "Property") and has been since 2017. The Property is a 3893 square foot business with 5 tenants operating out of various suites.

7.    Prior to Hurricane Helene, the Property's roof was found to be in great condition and upon information and belief, was previously inspected by Defendant's underwriting department prior to Defendant issuing a policy of insurance. Plaintiff timely made all payments under the Policy and fulfilled its obligations.

8.    On September 27, 2024, the Property suffered a loss as a result of Hurricane Helene, leading to immediately observable damage at the Property, including visible water damage coming into the building through the roof and ceiling.

9.    One of Plaintiff's tenants, Boujee Barn Boutique, which is primarily owned by Hanna Rearden, had kept inventory inside of the Property that was destroyed as a result of the Hurricane Loss. Defendants informed Plaintiff and Hanna Rearden that Plaintiff's Policy would cover any losses Boujee Barn would sustain, that Boujee Barn did not need a separate policy of insurance, and should a loss occur, Boujee Barn would simply make a claim under Plaintiff's Policy.

10.    At the time of the Loss, Plaintiff was insured by the Defendant under Insurance Policy 99-BW-P616-9. A copy of the Policy and Declarations are attached hereto as **Exhibit 1**.

11.    Plaintiff immediately reported the claim, and Defendant assigned the Claim as Claim Number 40-P869-2K2.

12.    Plaintiff also immediately began mitigating its damages by purchasing industrial circular fans to dry out the excessive water damage that occurred as a result of Hurricane Helene.

13.    On October 7, 2024, Defendant scheduled an inspection of the Property to occur on

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

October 26, 2024. Confusingly, despite that Reggie and Hanna Rearden were the points of contact for Plaintiff, Defendant contacted Reggie Rearden's mother, Tonya Rearden, to schedule this inspection. Reggie Rearden's mother has no interest in Plaintiff Aiken Blvd LLC and has never had an interest in Aiken Blvd LLC.

14.    On October 25, 2024, two days prior to the scheduled inspection at the Property, Defendant stated that it needed to cancel and reschedule the upcoming inspection. At this time, Defendant *again* improperly contacted Tonya Rearden to discuss the Claim.

15.    On November 14, 2024, Defendant rescheduled the Property's inspection for November 16, 2024.

16.    However, on November 16, 2024, Defendant contacted Plaintiff that Defendant needed to reschedule.

17.    On November 26, 2024, Defendant contacted Plaintiff to reschedule the inspection for November 30, 2024.

18.    On November 30, 2024, Defendant reschedule the inspection until December 2, 2024. Defendant eventually conducted the inspection on December 3, 2024.

19.    On December 3, 2024, for the first time since the September loss, Defendant inspected the Property.

20.    After the inspection, Defendant provided Plaintiff a $2,129.35 estimate finding Wind Damage to the Property.

21.    After Plaintiff's $1,000.00 deductible and depreciation were applied, Defendant issued Plaintiff a check in the amount of $1,097.82 for damage to Plaintiff's ceiling, storage room, office, exterior walls, and for roofing labor. A copy of Defendant's Estimate and Check proving coverage are attached hereto as **Exhibit 2**.

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

3

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

22.     Plaintiff immediately explained that the amount issued woefully undervalued the Claim. At that time, Plaintiff informed Defendant of the significant water damage and it believed there were significant safety concerns at the Property, including that the roof would cave in or that mold would begin growing at the Property if Defendant continued to undervalue the Claim.

23.     Plaintiff also informed Defendant that Plaintiff's tenant had several inventory items damaged and was unable to reopen since a large hole in the Property's ceiling was immediately above the tenant's inventory stock room.

24.     Shortly after issuing payment and providing coverage for the Claim, Defendant emailed Plaintiff stating that there was no damage to Plaintiff's Property.

25.     Plaintiff was extremely confused given that Defendant had already afforded coverage under the Policy, so Plaintiff asked for a second inspection.

26.     In response to Plaintiff's request for a second inspection, Defendant stated it would only be wiling to reinspect the Property if Plaintiff hired a contractor to submit photos of the damage and an itemized estimate for repairs.

27.     Despite being confused, Plaintiff complied with Defendant's requests and hired a contractor, who submitted photographs to Defendant that same month.

28.     In response, Defendant informed Plaintiff that Plaintiff's roof was related to wear and tear despite that Defendant had previously approved Plaintiff's roof for repair.

29.     Plaintiff repeatedly requested that Defendant conduct a reinspection; however, Defendant refused.

30.     As a result, Plaintiff was forced to hire a Licensed Public Adjuster, Mission Property Loss Consultants, to assist Plaintiff with the Claim.

31.     In February 2025, Plaintiff, through their Public Adjuster, followed up with Defendant

---

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

as to the status of the Claim. However, Defendant would not respond.

32.     In March 2025, Plaintiff, through their Public Adjuster, followed up with Defendant as to the status of the Claim. At that time, Plaintiff submitted a sworn statement of Proof of Loss for $191,606.06 for damage under Coverage A, $892.91 damage under Coverage B, $27,706.20 for contents under Coverage C, $54,646.03 for loss income, and $5,443.20 for loss of use. A copy of the Proof of Loss is attached hereto as **Exhibit 3**. However, Defendant would not respond.

33.     In April 2025, Plaintiff, through their Public Adjuster, followed up with Defendant as to the status of the Claim. However, Defendant would not respond.

34.     On May 8, 2025, Defendant finally agreed to reinspect Plaintiff's Property, but Defendant did not bring an engineer, a roofer, or any other person with Defendant to the inspection. At that time, Plaintiff, through its Public Adjuster, reiterated to Defendant that, prior to Hurricane Helene, the Property had no leaks and there was no prior roof damage.

35.     On May 22, 2025, Defendant contacted Plaintiff, directly, to inform Plaintiff that Defendant was denying Plaintiff's *entire* Claim due to no storm related damages. At that time, Plaintiff reminded Defendant that Defendant was supposed to be communicating with Plaintiff through its Public Adjuster. A copy of the denial is attached as **Exhibit 4**.

36.     Defendant significantly and intentionally undervalued Plaintiff's Claim.

37.     Defendant was informed that there were serious safety concerns with the Property, and that Plaintiff was concerned that there would be mold growth or interior water damage at the Property.

38.     Plaintiff repeatedly followed up with Defendant, but Defendant refused to respond.

39.     Plaintiff has continued to mitigate its damages by tarping the roof; however, Defendant's refusal to pay has caused significant safety concerns for Plaintiff and its tenants.

40.     Defendant had already provided coverage and acknowledged that the Plaintiff's loss

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

was covered under the Policy, yet Defendant refused to reasonably adjust the Claim.

41.    Defendant has placed its own financial gain ahead of the Plaintiff's interests.

42.    Defendant has failed to conduct a full, fair, and prompt investigation of Plaintiff's Claim and misrepresented Policy terms and conditions.

43.    Defendant refused to pay Plaintiff in a timely manner for items covered under the Policy despite previously acknowledging that Plaintiff was entitled to the funds. Defendant previously recognized that Plaintiff has a valid Claim, but Defendant refused to pay.

44.    Defendant refused to settle the Claim with Plaintiff in good faith.

45.    Defendant refused to act diligently and in good faith in effecting settlement within Policy limits.

46.    Plaintiff relied upon Defendant, including to fairly and promptly adjust Plaintiff's Claim and provide payment.

47.    Due to Defendant's actions and inactions, Defendant has compelled Plaintiff to institute this litigation and hire a licensed public adjuster to recover amounts due under the Policy.

48.    Plaintiff repeatedly provided all information and documentation relevant to Plaintiff's contention that Defendant has drastically undervalued the Claim and/or provided payment for covered items under the Policy. Such information was not reasonably considered by the Defendant. As such, Plaintiff continues to expend time, energy, and resources to provide estimates, reports, and further information in support of the Claim. However, Defendant has shown no interest in properly reviewing the Policy and facts of the Claim to provide coverage for an otherwise covered Loss.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

49.    Plaintiff realleges and incorporates the preceding allegations as if set forth verbatim herein.

---

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

6

50. The Policy is and was a valid and enforceable contract between Plaintiff and Defendant.

51. Defendant breached this contract by failing to provide the benefits, coverage and payments due thereunder to Plaintiff, including Defendant's failure and refusal to pay the Claim is unreasonable.

52. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered monetary damages in an amount equal to the payments due under the Policy, as well as consequential and incidental damages.

53. Plaintiff is informed and believes it is entitled to statutory attorney's fees.

54. Plaintiff's damages are in excess of this Court's jurisdictional threshold.

## SECOND CLAIM FOR RELIEF
### (Bad Faith)

55. Plaintiff realleges and incorporates the preceding allegations as if set forth verbatim herein.

56. That this cause of action is brought for actual, consequential, incidental, and punitive damages due to the above-described actions of the Defendant and the bad faith refusal to properly adjust and pay Plaintiff's Claim for benefits under the contract of insurance.

57. That issuance of the policy of insurance to Plaintiff and the subsequent renewals thereof created a contractual relationship between the parties.

58. That the Defendant, therefore, is subject to the implied-in-law duty to act fairly and in good faith in order not to deprive Plaintiff of the benefits of the Policy of insurance, in order not to cause Plaintiff additional damages, and in order not to delay and/or hinder payment of Plaintiff's claim.

59. That Defendant breached the duty and covenant of good faith and fair dealing in the following particulars:

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

7

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

a.      in misrepresenting pertinent facts and/or Policy provisions relating to the coverages provided by the policy of insurance;

b.      in providing deceptive and/or misleading information with respect to coverages provided by the policy of insurance;

c.      in failing to acknowledge with reasonable promptness pertinent communications from its insured with respect to the claims arising under the Policy of insurance;

d.      in failing to adopt, implement, and/or follow reasonable standards for the prompt investigation and settlement of Plaintiff's claims arising under the Policy of insurance;

e.      in invoking or threatening to invoke policy defenses not in good faith and/or with a reasonable expectation of prevailing with respect to the policy defenses but for the primary purpose of discouraging or reducing Plaintiff's Claim;

f.      in misrepresenting that Plaintiff's claims were not covered by its policy of insurance and attempting to claim that the cause of Defendant's damages was the result of an uninsured cause and/or event;

g.      in delaying and/or refusing to pay said claim by alleging non-coverage to its insured when Defendant knew or should have known that Plaintiff's claim was covered;

h.      in engaging in a course of conduct which was for the purpose of wearing down its insureds in order to get its insured to abandon the Claim;

i.      knowingly misrepresenting to Plaintiff pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages;

j.      failing to fully communicate all benefits due to Plaintiff under the Policy of insurance;

k.      failing to acknowledge with reasonable promptness pertinent communications with respect to a claim arising under its policies;

l.      failing to fully investigate coverage; and/or

m.      not attempting in good faith to effect prompt, fair, and equitable settlement of

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

Plaintiff's claim submitted to it in which liability had become reasonably clear,

60.     That as a direct result of the above-described acts or omissions, Plaintiff has incurred actual, consequential, and incidental damages.

61.   That Plaintiff is informed and believes that it is entitled to actual, consequential, incidental, and punitive damages on their Second Cause of Action, together with pre-judgment interest on the amount due under the Policy of insurance from the date its claim should have been paid.

62.     Defendant's acts and omissions show reckless indifference to Plaintiff's rights, oppression, insult, rudeness, caprice and willfulness.

63.     As a result of the acts and omissions of Defendant, Plaintiff has sustained damages and losses and are entitled to recover punitive and compensatory damages in an amount to be proven at trial.

64.     Plaintiff's damages exceed this Court's jurisdictional threshold.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays the Court for relief as follows:

1.     That Plaintiff have and recover of Defendant a sum equal to the benefits due under the Policy as well as actual, incidental, consequential damages to be proven at trial;

2.     That Plaintiff be awarded statutory attorneys' fees to the extent allowed by law, including through S.C. Code § 38-59-40;

3.     That Defendant be taxed with prejudgment interest;

4.     That judgment for punitive damages in an amount sufficient to deter the Defendant from engaging in similar conduct in the future;

5.     That all issues of fact be tried by a jury; and

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

9

6.      For such other, further and different relief as the Court deems just and proper.


This the 15ᵗʰ day of September, 2025.

**HOWARD STALLINGS LAW FIRM**


By:  /s/ Brooke E. Webber
        Brooke E. Webber (State Bar No.: 106810)
        Post Office Box 12347
        Raleigh, North Carolina 27605
        T: (919) 821-7700; F: (919) 821-7703
        E:  bwebber@howardstallings.com
        *Counsel for Plaintiff*

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

1:25-cv-13076-JFA Date Filed 10/22/25 Entry Number 1-1

*Po Box 2915*
*Bloomington IL 61702-2915* - -

| | |
|---|---|
| **Policy Number** | **99-BW-P616-9** |

**Named Insured**

AT2                              M-27-94D0-FB90  F  U
                006210 3125

AIKEN BLVD LLC
PO BOX 729
WARRENVILLE SC  29851-0729

| **Policy Period** | **Effective Date** | **Expiration Date** |
|---|---|---|
| 12 Months | DEC 1 2023 | DEC 1 2024 |

The policy period begins and ends at 12:01 am standard time at the premises location.

**Agent and Mailing Address**
JIMMY ROONEY JR
1820 JEFFERSON DAVIS HWY
GRANITEVILLE SC  29829-4032

PHONE: (803) 593-1991

# EXHIBIT 1

**Office Policy**

**Automatic Renewal** - If the **policy period** is shown as **12 months**, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

Entity: Individual

NOTICE:  Information concerning changes in your policy language is included. Please call your agent if you have any questions.

POLICY PREMIUM                    $    1,287.00

Discounts Applied:
 Renewal Year
 Years in Business
 Claim Record

COUNTY: AIKEN

Prepared
OCT 09 2023
CMP-4000

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

042315 294   I
N   A1,D2

530-686 a.2 05-31-2011 {o1f3231c}

0107-ST-0001

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**RENEWAL DECLARATIONS (CONTINUED)**

**Office Policy for AIKEN BLVD LLC**
**Policy Number         99-BW-P616-9**

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

## SECTION I - PROPERTY SCHEDULE

| Location Number | Location of Described Premises | Limit of Insurance* Coverage A - Buildings | Limit of Insurance* Coverage B - Business Personal Property | Seasonal Increase- Business Personal Property |
|---|---|---|---|---|
| 001 | 52 AIKEN BLVD WARRENVILLE SC  29851-2983 ZONE: 56 | $   312,600 | $   32,800 | 25% |

OCT 09 2023

\* As of the effective date of this policy, the Limit of Insurance as shown includes any increase in the limit due to Inflation Coverage.

## SECTION I - INFLATION COVERAGE INDEX(ES)

Cov A - Inflation Coverage Index:          211.4
Cov B - Consumer Price Index:              307.0

## SECTION I - DEDUCTIBLES

**Basic Deductible**          $1,000

**Special Deductibles:**

Money and Securities          $250          Employee Dishonesty          $250
Equipment Breakdown          $1,000

Other deductibles may apply - refer to policy.

Prepared
OCT 09 2023
CMP-4000

© Copyright, State Farm Mutual Automobile Insurance  Company, 2008
Includes copyrighted material of Insurance Services  Office, Inc., with its permission.

042315                          Continued on Next Page

**RENEWAL DECLARATIONS (CONTINUED)**

**Office Policy for AIKEN BLVD LLC**
**Policy Number        99-BW-P616-9**

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

## SECTION I - EXTENSIONS OF COVERAGE - LIMIT OF INSURANCE - EACH DESCRIBED PREMISES

**The coverages and corresponding limits shown below apply separately to each described premises shown in these Declarations, unless indicated by "See Schedule." If a coverage does not have a corresponding limit shown below, but has "Included" indicated, please refer to that policy provision for an explanation of that coverage.**

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Accounts Receivable | |
|   On Premises | $50,000 |
|   Off Premises | $15,000 |
| Arson Reward | $5,000 |
| Back-Up Of Sewer Or Drain | $15,000 |
| Collapse | Included |
| Damage To Non-Owned Buildings From Theft, Burglary Or Robbery | Coverage B Limit |
| Debris Removal | 25% of covered loss |
| Equipment Breakdown | Included |
| Fire Department Service Charge | $5,000 |
| Fire Extinguisher Systems Recharge Expense | $5,000 |
| Forgery Or Alteration | $10,000 |
| Glass Expenses | Included |
| Increased Cost Of Construction And Demolition Costs (applies only when buildings are insured on a replacement cost basis) | 10% |
| Money And Securities (Off Premises) | $5,000 |
| Money And Securities (On Premises) | $10,000 |
| Money Orders And Counterfeit Money | $1,000 |
| Newly Acquired Business Personal Property (applies only if this policy provides Coverage B - Business Personal Property) | $100,000 |
| Newly Acquired Or Constructed Buildings (applies only if this policy provides Coverage A - Buildings) | $250,000 |

Prepared
OCT 09 2023
CMP-4000

042316 294
N

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Continued on Reverse Side of Page

**RENEWAL DECLARATIONS (CONTINUED)**

**Office Policy for AIKEN BLVD LLC**
**Policy Number          99-BW-P616-9**

| | |
|---|---|
| Ordinance Or Law - Equipment Coverage | Included |
| Outdoor Property | $5,000 |
| Personal Effects (applies only to those premises provided Coverage B - Business Personal Property) | $5,000 |
| Personal Property Off Premises | $15,000 |
| Pollutant Clean Up And Removal | $10,000 |
| Preservation Of Property | 30 Days |
| Property Of Others (applies only to those premises provided Coverage B - Business Personal Property) | $2,500 |
| Signs | $2,500 |
| Unauthorized Business Card Use | $5,000 |
| Valuable Papers And Records<br>  On Premises<br>  Off Premises | <br>$50,000<br>$15,000 |
| Water Damage, Other Liquids, Powder Or Molten Material Damage | Included |

OCT 09 2023

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

<u>**SECTION I - EXTENSIONS OF COVERAGE - LIMIT OF INSURANCE - PER POLICY**</u>

**The coverages and corresponding limits shown below are the most we will pay regardless of the number of described premises shown in these Declarations.**

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Dependent Property -   Loss Of Income | $5,000 |
| Employee Dishonesty | $10,000 |
| Utility Interruption - Loss Of Income | $10,000 |
| Loss Of Income And Extra Expense | Actual Loss Sustained - 12 Months |

Prepared
OCT 09 2023
CMP-4000

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

042316

Continued on Next Page

**RENEWAL DECLARATIONS (CONTINUED)**

**Office Policy for AIKEN BLVD LLC**
**Policy Number          99-BW-P616-9**

## SECTION II - LIABILITY

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Coverage L - Business Liability | $1,000,000 |
| Coverage M - Medical Expenses (Any One Person) | $5,000 |
| Damage To Premises Rented To You | $300,000 |

| AGGREGATE LIMITS | LIMIT OF INSURANCE |
|---|---|
| Products/Completed Operations Aggregate | $2,000,000 |
| General Aggregate | $2,000,000 |

Each paid claim for Liability Coverage reduces the amount of insurance we provide during the applicable annual period. Please refer to Section II - Liability in the Coverage Form and any attached endorsements.

Your policy consists of these Declarations, the BUSINESSOWNERS COVERAGE FORM shown below, and any other forms and endorsements that apply, including those shown below as well as those issued subsequent to the issuance of this policy.

## FORMS AND ENDORSEMENTS

| | |
|---|---|
| CMP-4100 | Businessowners Coverage Form |
| FE-6999.3 | *Terrorism Insurance Cov Notice |
| CMP-4819.1 | Unauthorized Business Card Use |
| CMP-4240.4 | Amendatory Endorsement |
| CMP-4705.2 | Loss of Income & Extra Expense |
| CMP-4710 | Employee Dishonesty |
| CMP-4709 | Money and Securities |
| CMP-4706 | Back-Up of Sewer or Drain |
| CMP-4704.1 | Dependent Prop Loss of Income |
| CMP-4703.1 | Utility Interruption Loss Incm |
| FE-3650 | Actual Cash Value Endorsement |
| CMP-4561.4 | Policy Endorsement |
| FD-6007 | Inland Marine Attach Dec |

Prepared
OCT 09 2023
CMP-4000

042317 294
N

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Continued on Reverse Side of Page

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

0307-ST-0001

**RENEWAL DECLARATIONS (CONTINUED)**

**Office Policy for AIKEN BLVD LLC**
**Policy Number          99-BW-P616-9**

\* New Form Attached

## SCHEDULE OF ADDITIONAL INTERESTS

**Interest Type:**  Mortgagee
**Endorsement #:**  N/A
**Loan Number:**  N/A

PINNACLE BANK
ISAOA ATIMA
PO BOX 430
ELBERTON GA  30635-0430

This policy is issued by the State Farm Fire and Casualty Company.

Participating Policy

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yaudell*
Secretary

*Michael F Tipsord*
President

Prepared
OCT 09 2023
CMP-4000

© Copyright, State Farm Mutual Automobile Insurance  Company, 2008
Includes copyrighted material of Insurance Services  Office, Inc., with its permission.

042317                    Continued on Next Page                    Page  6 of  7

OCT 09 2023

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**RENEWAL DECLARATIONS (CONTINUED)**

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**Office Policy for AIKEN BLVD LLC**
**Policy Number        99-BW-P616-9**



0407-ST-0001

**NOTICE TO POLICYHOLDER:**

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes requested before the "Date Prepared", which appear on this notice, are effective on the Renewal Date of this policy unless otherwise indicated by a separate endorsement, binder, or amended declarations. Any coverage forms attached to this notice are also effective on the Renewal Date of this policy.

Policy changes requested after the "Date Prepared" will be sent to you as an amended declarations or as an endorsement to your policy. Billing for any additional premium for such changes will be mailed at a later date.

If, during the past year, you've acquired any valuable property items, made any improvements  to insured property, or have any questions about your insurance coverage, contact your State Farm agent.

Please keep this with your policy.

**Your coverage amount....**

It is up to you to choose the coverage and limits that meet your needs. We recommend that you purchase a coverage limit equal to the estimated replacement cost of your structure. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an estimate from Xactware, Inc.®using information you provide about your structure. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your structure. State Farm®does not guarantee that any estimate will be the actual future cost to rebuild your structure. Higher limits are available at higher premiums. Lower limits are also available, as long as the amount of coverage meets our underwriting requirements. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your structure.

Prepared
OCT 09 2023
CMP-4000

© Copyright, State Farm Mutual Automobile Insurance  Company, 2008
Includes copyrighted material of Insurance Services  Office, Inc., with its permission.

042318 294
N

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**STATE FARM FIRE AND CASUALTY COMPANY**
*A STOCK COMPANY WITH HOME OFFICES IN BLOOMINGTON, ILLINOIS*   **INLAND MARINE ATTACHING DECLARATIONS**

*Po Box 2915*
*Bloomington IL 61702-2915*

| Policy Number | 99-BW-P616-9 |
|---|---|

**Named Insured**

M-27-94D0-FB90  F  U

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months | DEC 1 2023 | DEC 1 2024 |

The policy period begins and ends at 12:01 am standard time at the premises location.

AIKEN BLVD LLC
PO BOX 729
WARRENVILLE SC  29851-0729



0507-ST-0001

## ATTACHING INLAND MARINE

**Automatic Renewal** - If the **policy period** is shown as **12 months** , this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

**Annual Policy Premium**          Included

The above Premium Amount is included in the Policy Premium shown on the Declarations.

Your policy consists of these Declarations, the INLAND MARINE CONDITIONS shown below, and any other forms and endorsements that apply, including those shown below as well as those issued subsequent to the issuance of this policy.

**Forms, Options, and Endorsements**

FE-8739          Inland Marine Conditions
FE-8743.1        Inland Marine Computer Prop

See Reverse for Schedule Page with Limits

Prepared
OCT 09 2023
FD-6007

042319

© Copyright, State Farm Mutual Automobile Insurance  Company, 2008
Includes copyrighted material of Insurance Services  Office, Inc., with its permission.

530-686 a.2 05-31-2011 {o1f3232c}

**ATTACHING INLAND MARINE SCHEDULE PAGE**

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**ATTACHING INLAND MARINE**

| ENDORSEMENT NUMBER | COVERAGE | LIMIT OF INSURANCE | DEDUCTIBLE AMOUNT | ANNUAL PREMIUM |
|---|---|---|---|---|
| FE-8743.1 | Inland Marine Computer Prop | $   25,000 | $   500 | Included |
|  | Loss of Income and Extra Expense | $   25,000 |  | Included |

OCT 09 2023

OTHER LIMITS AND EXCLUSIONS MAY APPLY - REFER TO YOUR POLICY

Prepared
OCT 09 2023
FD-6007

042319

© Copyright, State Farm Mutual Automobile Insurance  Company, 2008
Includes copyrighted material of Insurance Services  Office, Inc., with its permission.

530-686 a.2 05-31-2011 (o1f3233c)



0607-ST-0001

FE-6999.3
Page 1 of 1

In accordance with the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2019, this disclosure is part of your policy.

## POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is not excluded from your policy. However your policy does contain other exclusions which may be applicable, such as an exclusion for nuclear hazard. You are hereby notified that the Terrorism Risk Insurance Act, as amended in 2019, defines an act of terrorism in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under this policy, any covered losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. Under the formula, the United States Government generally reimburses 80% beginning on January 1,

2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

There is no separate premium charged to cover insured losses caused by terrorism. Your insurance policy establishes the coverage that exists for insured losses. This notice does not expand coverage beyond that described in your policy.

THIS IS YOUR NOTIFICATION THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER YOUR POLICY MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE YOUR COVERAGE.

FE-6999.3

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

553-3447.1



0707-ST-0001

# IMPORTANT NOTICE . . . Data Compromise Coverage Now Available

Nearly all businesses collect and retain personal information about their clients, employees and business associates. Yet many businesses lack the resources to respond effectively in the event this data is stolen or released when it is in their care, custody or control.

If a data breach occurs, a business may be required to notify all parties who were affected by the breach, effectively communicate the nature of the loss or disclosure and, if warranted, provide credit monitoring assistance and identity restoration case management service to those affected. Many states already require businesses to provide these services.

Data Compromise coverage may help a business respond to the expense of service obligations following a covered data breach.

**Coverage Summary**

Data Compromise coverage is designed to help a business investigate a data breach, notify individuals and provide credit monitoring, case management and other services that help prevent identity theft and fraud following a covered breach of non-public personal information. Data Compromise coverage may be available for certain necessary and reasonable expenses including:

- Legal and forensic information technology reviews;
- Notification to affected individuals; and
- Service to affected individuals including:
  - Informational materials;
  - Toll-free help line;
  - Credit report monitoring; and
  - Identity restoration case management.

If you choose to purchase Data Compromise coverage, Identity Restoration coverage will be included for your business.

No one can predict if a covered data breach will occur, but you are able to protect your business from certain response costs a breach may create. If you are interested in adding Data Compromise coverage to your policy, contact your State Farm® agent to see if your business qualifies.

553-3447.1 (C)

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

553-4183 SC

## Important Notice About Your Policy

South Carolina law requires that we show you the portion of your premium that is allocated to wind/hail coverage.

The chart below lists each rating zone along with the percentage of premium that is included for wind/hail coverage. Your **zone** is shown on your Renewal Certificate or Declarations Page. If your policy has multiple locations, your zone is shown with each location listed on the Schedule Page. Locate your zone on the chart below to determine the percentage of your premium that is included for wind/hail coverage.

For example, if your building is located in Zone 15, then an average of 45% of your premium pays for claims from wind/hail coverage.

| Zone | % of Premium for Wind/Hail Losses |
|---|---|
| 15, 16 | 45% |
| 27, 28, 29 | 27% |
| 35, 36 | 23% |
| 45, 46, 47, 48 | 18% |
| 50, 51, 52, 54, 55, 56, 57, 58, 59 | 14% |

If you have any questions, please contact your State Farm® agent.

553-4183 SC

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475



# State Farm®
# Businessowners
# Coverage Form

CMP-4100

**BUSINESSOWNERS COVERAGE FORM**
**TABLE OF CONTENTS**

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

| | Page |
|---|---|
| AGREEMENT | 3 |
| **SECTION I — PROPERTY** | 3 |
| **Coverage A – Buildings** | 3 |
| **Coverage B – Business Personal Property** | 3 |
| **Property Not Covered** | 3 |
| **Property Subject To Limitations** | 4 |
| **SECTION I — COVERED CAUSES OF LOSS** | 4 |
| **SECTION I — EXCLUSIONS** | 5 |
| Ordinance Or Law | 5 |
| Earth Movement | 5 |
| Volcanic Eruption | 5 |
| Governmental Action | 5 |
| Nuclear Hazard | 5 |
| Power Failure | 5 |
| War And Military Action | 5 |
| Water | 5 |
| Certain Computer-Related Losses | 6 |
| Fungi, Virus Or Bacteria | 6 |
| Electrical Apparatus | 6 |
| Consequential Losses | 6 |
| Smoke, Vapor, Gas | 6 |
| Steam Apparatus | 6 |
| Frozen Plumbing | 7 |
| Dishonesty | 7 |
| False Pretense | 7 |
| Exposed Property | 7 |
| Collapse | 7 |
| Pollution | 7 |
| Neglect | 7 |
| Other Types Of Losses | 7 |
| Errors Or Omissions | 7 |
| Installation, Testing, Repair | 7 |
| Electrical Disturbance | 8 |
| Continuous Or Repeated Seepage, Discharge Or Leakage Of Water | 8 |

| | Page |
|---|---|
| Weather Conditions | 8 |
| Acts Or Decisions | 8 |
| Work | 8 |
| Loss To Products | 8 |
| **SECTION I — EXTENSIONS OF COVERAGE** | 8 |
| Debris Removal | 8 |
| Preservation Of Property | 9 |
| Fire Department Service Charge | 9 |
| Collapse | 9 |
| Water Damage, Other Liquids, Powder Or Molten Material Damage | 10 |
| Pollutant Clean Up And Removal | 10 |
| Money Orders And Counterfeit Money | 10 |
| Forgery Or Alteration | 10 |
| Increased Cost Of Construction And Demolition Cost | 10 |
| Glass Expenses | 11 |
| Fire Extinguisher Systems Recharge Expense | 11 |
| Newly Acquired Or Constructed Property | 12 |
| Personal Property Off Premises | 12 |
| Outdoor Property | 12 |
| Personal Effects | 12 |
| Valuable Papers And Records | 13 |
| Accounts Receivable | 13 |
| Signs | 13 |
| Arson Reward | 13 |
| Damage To Non-Owned Buildings From Theft, Burglary Or Robbery | 14 |
| Property Of Others | 14 |
| Equipment Breakdown | 14 |
| Ordinance Or Law – Equipment Coverage | 16 |
| **SECTION I — LIMITS OF INSURANCE** | 17 |
| **SECTION I — DEDUCTIBLES** | 17 |
| **SECTION I — CONDITIONS** | 17 |
| Abandonment | 17 |
| Appraisal | 17 |
| Duties In The Event Of Loss | 17 |
| Legal Action Against Us | 18 |
| Loss Payment | 18 |

CMP-4100

1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

| | Page |
|---|---|
| Recovered Property | 20 |
| Vacancy | 20 |
| Control Of Property | 20 |
| Mortgageholders | 20 |
| No Benefit To Bailee | 21 |
| Policy Period, Coverage Territory | 21 |
| **SECTION I — DEFINITIONS** | 21 |
| **SECTION II — LIABILITY** | 23 |
| **Coverage L – Business Liability** | 23 |
| **Section II – Supplementary Payments** | 23 |
| **Section II – Exclusions** | 24 |
| Expected Or Intended Injury | 24 |
| Contractual Liability | 24 |
| Liquor Liability | 25 |
| Workers' Compensation And Similar Laws | 25 |
| Employer's Liability | 25 |
| Employment-Related Practices | 25 |
| Pollution | 25 |
| Aircraft, Auto Or Watercraft | 26 |
| Mobile Equipment | 27 |
| War | 27 |
| Professional Services Or Treatment | 27 |
| Damage To Property | 27 |
| Damage To Your Product | 27 |
| Damage To Your Work | 28 |
| Damage To Impaired Property Or Property Not Physically Injured | 28 |
| Recall Of Products, Work Or Impaired Property | 28 |
| Personal And Advertising Injury | 28 |
| Electronic Data | 28 |
| Recording And Distribution Of Material In Violation Of Law | 29 |
| Fungi | 29 |
| **SECTION II — DAMAGE TO PREMISES RENTED TO YOU** | 29 |
| **SECTION II — MEDICAL EXPENSES** | 29 |
| **Coverage M – Medical Expenses** | 29 |
| **Coverage M – Medical Expenses Exclusion** | 30 |
| **SECTION II — NUCLEAR ENERGY LIABILITY EXCLUSION** | 30 |
| **SECTION II — WHO IS AN INSURED** | 31 |
| **SECTION II — LIMITS OF INSURANCE** | 32 |
| **SECTION II — DEDUCTIBLES** | 33 |
| **SECTION II — GENERAL CONDITIONS** | 33 |
| Bankruptcy | 33 |
| Financial Responsibility Laws | 33 |
| Duties In The Event Of Occurrence, Offense, Claim Or Suit | 33 |
| Legal Action Against Us | 34 |
| Separation Of Insureds | 34 |
| **SECTION II — DEFINITIONS** | 34 |
| **SECTION I AND SECTION II — COMMON POLICY CONDITIONS** | 37 |
| Changes | 37 |
| Concealment, Misrepresentation Or Fraud | 37 |
| Examination Of Your Books And Records | 37 |
| Inspections And Surveys | 37 |
| Insurance Under Two Or More Coverages | 38 |
| Liberalization | 38 |
| Other Insurance | 38 |
| Premiums | 38 |
| Premium Audit | 39 |
| Transfer Of Rights Of Recovery Against Others To Us | 39 |
| Transfer Of Your Rights And Duties Under This Policy | 39 |
| Conformity To State Law | 39 |
| Severability | 39 |

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

CMP-4100

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AGREEMENT: We agree to provide the insurance described in this policy. You agree to pay premiums when due and comply with the provisions of this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance, as shown in the Declarations. Declarations include the policy Declarations or Renewal Declarations and any amendments thereto.

In **SECTION II — LIABILITY**, the word "insured" means any person or organization qualifying as such under **SECTION II — WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION I — DEFINITIONS** and **SECTION II — DEFINITIONS**. Definitions apply to the singular, plural, and possessive forms of these words and phrases.

## SECTION I — PROPERTY

When a Limit Of Insurance is shown in the Declarations for that type of property as described under **Coverage A – Buildings**, **Coverage B – Business Personal Property**, or both, we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under **SECTION I — COVERED CAUSES OF LOSS**.

Covered Property includes property as described under **Coverage A – Buildings**, property as described under **Coverage B – Business Personal Property**, or both.

Regardless of whether coverage is shown in the Declarations for **Coverage A – Buildings**, **Coverage B – Business Personal Property**, or both, there is no coverage for property described under **Property Not Covered**.

### Coverage A – Buildings

Buildings, meaning the buildings and structures at the described premises, including:

1. Completed additions;

2. Fixtures, including outdoor fixtures;

3. Permanently installed:

    a. Machinery; and

    b. Equipment;

4. Your personal property in apartments, rooms or common areas furnished by you as landlord;

5. Personal property owned by you that is used to maintain or service the buildings or structures or the described premises, including:

    a. Fire extinguishing equipment;

    b. Outdoor furniture;

    c. Floor coverings; and

    d. Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering; and

6. If not covered by other insurance:

    a. Additions under construction, alterations and repairs to the buildings or structures; and

    b. Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

### Coverage B – Business Personal Property

Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

1. Property, used in your business, that you own, lease from others or rent from others, or that is loaned to you;

2. Property of others that is in your care, custody or control, unless provided for in item **1.** immediately above;

3. Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    a. Made a part of the building or structure you occupy but do not own; and

    b. You acquired or made at your expense but cannot legally remove;

4. Building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for **Coverage A – Buildings**. The glass must be owned by you or in your care, custody or control; and

5. Property as described in **Coverage A – Buildings**, if you are a tenant and no Limit Of Insurance is shown in the Declarations for **Coverage A – Buildings**. The property must:

    a. Pertain to the described premises occupied but not owned by you; and

    b. Be your insurance responsibility according to the terms of your lease or rental agreement.

### Property Not Covered

Covered Property does not include:

1. Aircraft, automobiles, motor trucks or other vehicles subject to motor vehicle registration;

2. "Money" or "securities";

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

CMP-4100

3
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

3. Contraband or property in the course of illegal transportation, commerce or trade;

4. Land (including land necessary to support any covered building or structure).

   With respect to land the following are also not covered:

   a. Any cost required to replace, rebuild, excavate, grade, backfill, fill, stabilize or otherwise restore the land; or

   b. The cost of repair techniques designed to compensate for or prevent land instability to any building or structure;

5. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, outdoor signs (whether or not attached to buildings), and outdoor trees, shrubs, plants or lawns (other than trees, shrubs, plants or lawns while held as "stock"), all except as provided in the:

   a. Outdoor Property Extensions Of Coverage; or

   b. Signs Extensions Of Coverage;

6. Watercraft (including motors, equipment and accessories) while afloat;

7. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this coverage form;

8. "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, automobile, watercraft, motor truck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

9. "Electronic Data". This paragraph does not apply to your "stock" of prepackaged software; or

10. Natural water or growing crops.

## Property Subject To Limitations

1. We will not pay for loss to:

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by any condition or event inside such equipment. But we will pay for loss to such equipment caused by an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment, air conditioning units or refrigerating units caused by any condition or event inside such boilers or equipment, other than an explosion.

   c. Property that is missing, where the only evidence of the loss is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   d. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

e. The interior of any building or structure, or the property inside any building or structure, caused by rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   (1) The building or structure first sustains damage by a Covered Cause Of Loss to its roof, outside walls, or outside building glass through which the rain, snow, sleet, ice, sand or dust enters; or

   (2) The loss is caused by thawing of snow, sleet or ice on the building or structure.

f. Bridges, roadways, driveways, walks, patios or other paved surfaces, outdoor swimming pools and related equipment, retaining walls, bulkheads, pilings, piers, wharves, docks and underground pipes, flues or drains caused by:

   (1) Freezing or thawing;

   (2) Impact of watercraft; or

   (3) The pressure or weight of ice, water, or snow whether driven by wind or not.

2. We will not pay for loss to fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken, unless caused by any of the "specified causes of loss" or by building glass breakage. This restriction does not apply to:

   a. Glass that is part of the exterior or interior of a building or structure;

   b. Containers of property held for sale; or

   c. Photographic or scientific instrument lenses.

3. For loss by theft, the following types of property are covered only up to the limits shown:

   a. $2,500 for furs, fur garments and garments trimmed with fur.

   b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   c. $2,500 for patterns, dies, molds and forms.

4. Animals are covered only if:

   a. Owned by others and in your care, custody or control; or

   b. Held as "stock" and only while inside of buildings.

   We will pay only if the animals are killed, stolen, or their destruction is made necessary by any of the "specified causes of loss" or by building glass breakage.

## SECTION I — COVERED CAUSES OF LOSS

We insure for accidental direct physical loss to Covered Property unless the loss is:

1. Excluded in **SECTION I — EXCLUSIONS**; or

2. Limited in the **Property Subject To Limitations** provision.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

CMP-4100

4

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## SECTION I — EXCLUSIONS

**1.** We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

**a. Ordinance Or Law**

  **(1)** The enforcement of any ordinance or law:

   **(a)** Regulating the construction, use or repair of any property; or

   **(b)** Requiring the tearing down of any property, including the cost of removing its debris.

  **(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:

   **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

   **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following an accidental direct physical loss to that property.

**b. Earth Movement**

  **(1)** Earthquake, whether combined with water or not, including any earth sinking, rising or shifting related to such event;

  **(2)** Landslide, whether combined with water or not, including any earth sinking, rising or shifting related to such event;

  **(3)** Mine subsidence, whether combined with water or not, meaning subsidence of a man-made mine, whether or not mining activity has ceased; or

  **(4)** Earth sinking (other than "sinkhole collapse"), rising or shifting, whether combined with water or not, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, the action of water or any other natural forces; or improper compaction, site selection, excavation, retention, stabilization or any other external forces.

  But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss caused by that fire or explosion.

**c. Volcanic Eruption**

  Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or "volcanic action", we will pay for the loss caused by that fire, building glass breakage or "volcanic action".

  All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

**d. Governmental Action**

  Seizure or destruction of property by order of governmental authority.

  But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this coverage form.

**e. Nuclear Hazard**

  Nuclear reaction or radiation, or radioactive contamination.

  Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion or smoke.

  But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the loss caused by that fire.

**f. Power Failure**

  The failure of power or other utility service supplied to the described premises, if the failure occurs away from the described premises. Failure includes lack of sufficient capacity and reduction in supply.

  But if the failure of power or other utility service results in a Covered Cause Of Loss, we will pay for the loss caused by that Covered Cause Of Loss.

**g. War And Military Action**

  **(1)** War, including undeclared or civil war;

  **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  **(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**h. Water**

  **(1)** Flood, surface water, waves (including tidal waves, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not;

  **(2)** Mudslide or mudflow;

  **(3)** Water or sewage that backs up or overflows from a sewer, drain or sump;

  **(4)** Water or sewage under the ground surface pressing on, or flowing or seeping through:

   **(a)** Foundations, walls, floors or paved surfaces;

   **(b)** Basements, whether paved or not; or

   **(c)** Doors, windows or other openings; or

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

CMP-4100

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(5)** Material carried or otherwise moved by any of the Water, as described in Paragraphs **(1)** through **(4)** above.

But if Water, as described in Paragraphs **(1)** through **(5)**, results in accidental direct physical loss by fire, explosion or sprinkler leakage, we will pay for the loss caused by that fire, explosion or sprinkler leakage.

**i.  Certain Computer-Related Losses**

**(1)** The failure, malfunction or inadequacy of:

**(a)** Any of the following, whether belonging to any insured or to others:

**i.** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this coverage form;

**ii.** "Computer" application software or other "electronic data" as may be described elsewhere in this coverage form;

**iii.** "Computer" operating systems and related software;

**iv.** "Computer" networks;

**v.** Microprocessors ("computer" chips) not part of any "computer" system; or

**vi.** Any other computerized or electronic equipment or components; or

**(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times.

**(2)** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

But, if excluded loss, as described in Paragraph **(1)** above results in any of the "specified causes of loss" under **SECTION I — PROPERTY**, we will pay only for the loss caused by such "specified causes of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**j.  Fungi, Virus Or Bacteria**

**(1)** Growth, proliferation, spread or presence of "fungi" or wet or dry rot; or

**(2)** Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease; and

**(3)** We will also not pay for:

**(a)** Any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by "fungi", wet or dry rot, virus, bacteria or other microorganism;

**(b)** Any remediation of "fungi", wet or dry rot, virus, bacteria or other microorganism, including the cost or expense to:

**i.** Remove the "fungi", wet or dry rot, virus, bacteria or other microorganism from Covered Property or to repair, restore or replace that property;

**ii.** Tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot, virus, bacteria or other microorganism; or

**iii.** Contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the "fungi", wet or dry rot, virus, bacteria or other microorganism; or

**(c)** The cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of "fungi", wet or dry rot, virus, bacteria or other microorganism, whether performed prior to, during or after removal, repair, restoration or replacement of Covered Property.

This exclusion does not apply if "fungi", wet or dry rot, virus, bacteria or other microorganism results from an accidental direct physical loss caused by fire or lightning.

**2.** We do not insure under any coverage for loss whether consisting of, or directly and immediately caused by, one or more of the following:

**a.  Electrical Apparatus**

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in accidental direct physical loss by fire, we will pay for the loss caused by fire.

**b.  Consequential Losses**

Delay, loss of use or loss of market.

**c.  Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.  Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

**CMP-4100**

6

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in accidental direct physical loss by fire or combustion explosion, we will pay for the loss caused by that fire or combustion explosion.

We will also pay for loss caused by the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the water supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

Collapse, except as provided under **SECTION I — EXTENSIONS OF COVERAGE**. But if collapse results in a Covered Cause Of Loss, we will pay for the loss caused by that Covered Cause Of Loss.

**j. Pollution**

We will not pay for loss caused by the presence, discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the presence, discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in an accidental direct physical loss by any of the "specified causes of loss", we will pay for the loss caused by that "specified cause of loss".

**k. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force; or

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in an accidental direct physical loss by any of the "specified causes of loss" or by building glass breakage, we will pay for the loss caused by that "specified cause of loss" or by building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

But if accidental direct physical loss results from fire or explosion, we will pay for that resulting loss unless the resulting loss is itself one of the losses not insured in **SECTION I** of this coverage form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

But if accidental direct physical loss results from fire or explosion, we will pay for that resulting loss unless the resulting loss is itself one of the losses not insured in **SECTION I** of this coverage form.

CMP-4100

7

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data". However, we will pay for accidental direct loss caused by lightning.

**p. Continuous Or Repeated Seepage, Discharge Or Leakage Of Water**

Continuous or repeated seepage, discharge or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in Paragraphs **1.** and **2.** immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   **a. Weather Conditions**

   Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** and **2.** above to produce the loss.

   **b. Acts Or Decisions**

   Conduct, acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault.

   **c. Work**

   Faulty, inadequate or defective:

   **(1)** Planning, zoning, development, surveying, siting;

   **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **(3)** Materials used in repair, construction, renovation or remodeling; or

   **(4)** Maintenance;

   of part or all of any property (including land, structures or improvement of any kind) on or off the described premises.

But if accidental direct physical loss results from items **3.a.**, **3.b.**, or **3.c.**, we will pay for that resulting loss unless the resulting loss is itself one of the losses not insured in **SECTION I** of this coverage form.

4. **Additional Exclusion**

   The following applies only to the property specified in this Additional Exclusion.

   **Loss To Products**

   We will not pay for loss to any merchandise, goods or other product consisting of, caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product.  But if such error or omission results in a Covered Cause Of Loss, we will pay for the loss caused by that Covered Cause Of Loss.

## SECTION I — EXTENSIONS OF COVERAGE

Subject to the terms and conditions applicable to **SECTION I** of this coverage form, the following Extensions Of Coverage apply separately to each premises described in the Declarations. But the amount of insurance provided on any one described premises will not be more than the Limit Of Insurance specified in each Extension Of Coverage if a limit is included in the extension.

1. **Debris Removal**

   **a.** Subject to Paragraphs **c.** and **d.**, we will pay your expense to remove debris of Covered Property caused by a Covered Cause Of Loss that occurs during the policy period.

   If a covered building or structure is damaged by one or more broken or fallen trees, in any one occurrence, we will pay up to $500 for the removal of tree debris from each described premises.

   The expenses will be paid only if they are reported to us in writing within 180 days of the date of accidental direct physical loss.

   **b.** Debris Removal does not apply to costs to:

   **(1)** Extract "pollutants" from land or water; or

   **(2)** Remove, restore or replace polluted land or water.

   **c.** Subject to the exceptions in Paragraph **d.** the following provisions apply:

   **(1)** The most that we will pay for the total of accidental direct physical loss plus debris removal expense is the Limit Of Insurance applicable to the Covered Property that has sustained loss.

   **(2)** Subject to Paragraph **(1)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for accidental direct physical loss to the Covered Property that has sustained loss.

   **d.** We will pay up to an additional $10,000 for debris removal expense, for each described premises, in any one occurrence of accidental direct physical loss to Covered Property, if one or both of the following circumstances apply:

   **(1)** The total of the actual debris removal expense plus the amount we pay for accidental direct physical loss exceeds the Limit Of Insurance on the Covered Property that has sustained loss.

   **(2)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for accidental direct physical loss to the Covered Property that has sustained loss.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Therefore, if Paragraphs **d.(1)** and/or **d.(2)** apply, our total payment for accidental direct physical loss and debris removal expense may reach but will never exceed the Limit Of Insurance on the Covered Property that has sustained loss, plus $10,000.

**2. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss by a Covered Cause Of Loss, we will pay for any accidental direct physical loss to that property:

**a.** While it is being moved or while temporarily stored at another location; and

**b.** Only if the loss occurs within 30 days after the property is first moved.

The amount we pay under this Extension of Coverage will not increase the applicable Limit Of Insurance.

**3. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause Of Loss, the most we will pay for loss in any one occurrence, at the described premises, is the Limit Of Insurance for Fire Department Service Charge shown in the Declarations for your liability for fire department charges:

**a.** Assumed by contract or agreement prior to loss; or

**b.** Required by local ordinance.

The amount that we pay under this Extension Of Coverage is an additional amount of insurance.

**4. Collapse**

**a.** With respect to buildings:

**(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

**(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building; and

**(4)** A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We will pay for accidental direct physical loss to Covered Property, caused by collapse of a building or any part of a building that is insured under this coverage form or that contains Covered Property insured under this coverage form, if the collapse is caused by one or more of the following:

**(1)** Any of the "specified causes of loss" or by breakage of building glass, all only as insured against in this coverage form;

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**(4)** Weight of people or personal property;

**(5)** Weight of rain that collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in Paragraphs **(1)** through **(5)**, we will pay for the loss even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in Paragraphs **a.(1)** through **a.(4)** do not limit the coverage otherwise provided under this Extension Of Coverage for the causes of loss listed in Paragraphs **b.(1)**, **b.(4)**, and **b.(5)**.

**c.** With respect to the following property:

**(1)** Awnings;

**(2)** Gutters and downspouts;

**(3)** Yard fixtures;

**(4)** Outdoor swimming pools;

**(5)** Piers, wharves and docks;

**(6)** Beach or diving platforms or appurtenances;

**(7)** Retaining walls; and

**(8)** Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in Paragraphs **b.(2)** through **b.(6)**, we will pay for loss to that property only if such loss is a direct result of the collapse of a building insured under this coverage form and the property is Covered Property under this coverage form.

**d.** If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss to Covered Property caused by such collapse of personal property only if:

**(1)** The collapse of personal property was caused by a cause of loss listed in Paragraphs **b.(1)** through **b.(6)** of this Extension Of Coverage;

**(2)** The personal property which collapses is inside a building; and

**(3)** The property which collapses is not of a kind listed in Paragraph **c.** above, regardless of whether that kind of property is considered to be personal property or real property.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

CMP-4100

9

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The coverage stated in this Paragraph **d.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

e. The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

5. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss caused by covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the covered building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

a. Results in discharge of any substance from an automatic fire protection system; or

b. Is directly caused by freezing.

The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

6. **Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by a Covered Cause Of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause Of Loss occurs.

This Extension Of Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each described premises under this Extension Of Coverage is the Limit Of Insurance for Pollutant Clean Up And Removal shown in the Declarations. This limit is for the sum of all such expenses arising out of Covered Causes Of Loss occurring during each separate 12 month period of this policy.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

7. **Money Orders And Counterfeit Money**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

a. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

b. "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss in any one occurrence is the Limit Of Insurance for Money Orders And "Counterfeit Money" shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

8. **Forgery Or Alteration**

a. We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

b. If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

c. For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

d. The most we will pay for any loss, including legal expenses, in any one occurrence is the Limit Of Insurance for Forgery Or Alteration shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

9. **Increased Cost Of Construction And Demolition Cost**

a. This Extension Of Coverage applies only to buildings insured on a replacement cost basis.

b. In the event of damage by a Covered Cause Of Loss to a building that is Covered Property, we will pay the:

(1) Increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property; and

(2) Cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property;

subject to the limitations stated in Paragraphs **c.** through **i.** of this Extension Of Coverage.

c. The ordinance or law referred to in this Extension Of Coverage is an ordinance or law that is in force at the time of loss and regulates the demolition, repair, rebuilding, or replacement of buildings or establishes zoning or land use requirements at the described premises, and is in force at:

CMP-4100

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**(1)** The described premises; or

**(2)** Another premises, if such ordinance or law requires relocation.

**d.** Under this Extension Of Coverage, we will not pay any costs due to an ordinance or law that:

**(1)** You were required to comply with before the loss, even when the building was undamaged; and

**(2)** You failed to comply with.

**e.** Under this Extension Of Coverage, we will not pay for:

**(1)** The enforcement of any ordinance or law which requires demolition, repair, rebuilding, replacement, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, virus, bacteria or other microorganisms; or

**(2)** Any costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet or dry rot, virus, bacteria or other microorganisms.

**f.** The most we will pay under this Extension Of Coverage, for each described premises insured under **SECTION I — PROPERTY**, is the lesser of:

**(1)** The amount you actually spend:

**(a)** For the increased cost to repair, rebuild or replace the building at the described or another premises in the same general vicinity if relocation is required by ordinance or law, but not more than a building of the same height, floor area, and style on the same or similar premises as the damaged building; and

**(b)** To demolish and clear the site of the undamaged parts of the building at the described premises caused by enforcement of any ordinance or law; or

**(2)** The percentage for Increased Cost of Construction and Demolition Cost applied to the Limit Of Insurance applicable to that damaged building as shown in the Declarations.

If a damaged building is covered under a blanket Limit Of Insurance which applies to more than one building, then the most we will pay under this Extension Of Coverage is the amount determined by applying the percentage as shown in the Declarations to the risk amount shown in our records as of the most recent Declarations applicable to that damaged building.

The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

**g.** With respect to this Extension Of Coverage:

**(1)** We will not pay for the:

**(a)** Increased Cost Of Construction:

**i.** Until the property is actually repaired, rebuilt or replaced, at the described or another premises; and

**ii.** Unless the repairs, rebuilding or replacement are made as soon as reasonably possible after the loss, not to exceed two years. We may extend this period in writing during the two years.

**(b)** Loss of value for the undamaged portion of the building caused by enforcement of any ordinance or law.

**(2)** If the building is repaired, rebuilt or replaced at the described premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost Of Construction is the increased cost of construction at the described premises.

**(3)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost Of Construction is the increased cost of construction at the new premises.

**h.** This Extension Of Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Extension Of Coverage.

**i.** The amount payable under this Extension Of Coverage, as stated in Paragraph **f.** of this Extension Of Coverage, is not subject to Paragraph **e.(4)(a)iv.** under Loss Payment of **SECTION I — CONDITIONS**.

**10. Glass Expenses**

If Covered Property is damaged by a Covered Cause Of Loss we will pay for expenses incurred to:

**a.** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** Remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

**11. Fire Extinguisher Systems Recharge Expense**

**a.** We will pay:

**(1)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

**(2)** For loss to Covered Property if such loss is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**b.** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**c.** The most we will pay for loss in any one occurrence is the Limit Of Insurance for Fire Extinguisher Systems Recharge Expense shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

**12. Newly Acquired Or Constructed Property**

**a. Buildings**

If this coverage form covers Buildings, you may extend that insurance to apply to:

**(1)** Your new buildings while being built on the described premises; and

**(2)** Buildings you acquire not at the described premises, intended for:

**(a)** Similar use as the building at the described premises; or

**(b)** Use as a warehouse.

The most we will pay for loss under this Extension Of Coverage at each building, is the Limit Of Insurance for Newly Acquired Or Constructed Buildings shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

**b. Business Personal Property**

If this coverage form covers Business Personal Property, you may extend that insurance to apply to Business Personal Property:

**(1)** Including such property that you newly acquire, at any premises you acquire; or

**(2)** Including such property that you newly acquire, located at your newly constructed or acquired buildings at the described premises.

This Extension Of Coverage does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss under this Extension Of Coverage at each building, is the Limit Of Insurance for Newly Acquired Business Personal Property shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

**c. Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**13. Personal Property Off Premises**

You may extend the insurance provided by this coverage form to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at another premises. The most we will pay for loss in any one occurrence under this Extension Of Coverage is the Limit Of Insurance for Personal Property Off Premises shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

If the Covered Property is located at another premises you own, lease, operate, or regularly use, the insurance provided under this extension applies only if the loss occurs within 90 days after the property is first moved.

The Other Insurance Condition contained in **SECTION I AND SECTION II — COMMON POLICY CONDITIONS** does not apply to this Extension Of Coverage. The insurance provided under this Extension Of Coverage is primary and does not contribute with any other insurance.

**14. Outdoor Property**

You may extend the insurance provided by this coverage form to apply to your outdoor radio and television antennas (including satellite dishes), trees, shrubs, plants and lawns (other than trees, shrubs, plants or lawns held as "stock"). The loss must be caused by any of the following causes of loss:

**a.** Fire;

**b.** Lightning;

**c.** Explosion;

**d.** Riot or civil commotion;

**e.** Aircraft or vehicles;

**f.** Vandalism; or

**g.** Theft.

The most we will pay for loss in any one occurrence, at the described premises, under this Extension Of Coverage is the Limit Of Insurance for Outdoor Property shown in the Declarations. But we will not pay more than $1,000 for any one tree, shrub or plant.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

**15. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your employees, your partners or members (if you are a partnership or joint venture), your "managers" or "members" (if you are a limited liability company), or your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company). This extension does not apply to:

CMP-4100

12

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**a.** Tools or equipment used in your business; or

**b.** Loss by theft.

The most we will pay for loss in any one occurrence, at the described premises, under this Extension Of Coverage is the Limit Of Insurance for Personal Effects shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

**16. Valuable Papers And Records**

**a.** You may extend the insurance provided by this coverage form to apply to "valuable papers and records" that you own, or that are in your care, custody or control caused by a Covered Cause Of Loss. This Extension Of Coverage includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**b.** This Extension Of Coverage does not apply to:

**(1)** Property held as samples or for delivery after sale; and

**(2)** Property in storage away from the described premises.

**c.** The most we will pay for loss to "valuable papers and records" in any one occurrence, at the described premises, under this Extension Of Coverage is the Limit Of Insurance for Valuable Papers And Records (On Premises) shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay for loss in any one occurrence under this Extension of Coverage is the Limit Of Insurance for Valuable Papers And Records (Off Premises) shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

**d.** Loss to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**17. Accounts Receivable**

**a.** You may extend the insurance provided by this coverage form to apply to accounts receivable. We will pay:

**(1)** All amounts due from your customers that you are unable to collect;

**(2)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(3)** Collection expenses in excess of your normal collection expenses that are made necessary by loss; and

**(4)** Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from loss by any Covered Cause Of Loss to your records of accounts receivable.

**b.** The most we will pay for loss in any one occurrence, at the described premises, under this Extension Of Coverage is the Limit Of Insurance for Accounts Receivable (On Premises) shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay for loss in any one occurrence under this Extension Of Coverage is the Limit Of Insurance for Accounts Receivable (Off Premises) shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

**c.** The following exclusion applies to the Accounts Receivable Extension Of Coverage:

We will not pay for:

**(1)** Loss caused by alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(2)** Loss caused by bookkeeping, accounting or billing errors or omissions.

**(3)** Any loss that requires any audit of records or any inventory computation to prove its factual existence.

**18. Signs**

You may extend the insurance provided by this coverage form to apply to signs attached to buildings (whether indoor or outdoor) at the described premises and to outdoor signs not attached to buildings at the described premises which are owned by you, or owned by others but are in your care, custody or control.

The most we will pay for loss in any one occurrence under this Extension Of Coverage is the Limit Of Insurance for Signs shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

**19. Arson Reward**

We will pay a reward for information which leads to an arson conviction in connection with a fire loss covered under this coverage form.

Regardless of the number of persons involved in providing information, the most we will pay for loss in any one occurrence under this Extension Of Coverage is the Limit Of Insurance for Arson Reward shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

13
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**20. Damage To Non-Owned Buildings From Theft, Burglary Or Robbery**

You may extend the insurance that applies to Business Personal Property to apply to a building or part of a building, including equipment pertaining to the service of the building, occupied but not owned by you caused by actual or attempted theft, burglary or robbery.

This Extension Of Coverage does not apply to:

**a.** Glass, other than glass building blocks;

**b.** Any lettering or ornamentation; or

**c.** Building property or equipment removed from the described premises.

The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

**21. Property Of Others**

You may extend the insurance that applies to Business Personal Property to apply to personal property of others in your care, custody or control only while the personal property is located at the described premises. The most we will pay for loss in any one occurrence under this Extension Of Coverage is the Limit Of Insurance for Property Of Others shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

This Extension Of Coverage does not apply to:

**a.** Personal effects owned by you, your employees, your partners or members (if you are a partnership or joint venture), your "managers" or "members" (if you are a limited liability company), or your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company); or

**b.** Personal property of others that must be restored, repaired or replaced because your work was incorrectly performed on it.

The Other Insurance Condition contained in **SECTION I AND SECTION II — COMMON POLICY CONDITIONS** does not apply to this Extension Of Coverage. The insurance provided under this Extension Of Coverage is primary and does not contribute with any other insurance. We will decide if our payment for loss under this extension will be made to you or to the owner of the property.

**22. Equipment Breakdown**

**a.** You may extend the insurance provided by this coverage form to apply for direct physical loss to Covered Property caused by an "accident" to "covered equipment". The most we will pay for each covered loss under this Extension Of Coverage is the Limit Of Insurance that applies to the Covered Property, unless a specific limit is stated in the Additional Coverages below.

The amount we pay under this Extension Of Coverage, or any Additional Coverage described below, will not increase the applicable Limit Of Insurance.

**b.** **Equipment Breakdown Additional Coverage**

**(1) Expediting Expenses**. We will pay up to $100,000 for the reasonable extra cost to:

**(a)** Make temporary repairs to; and

**(b)** Expedite permanent repairs or permanent replacement of;

Covered Property damaged by an "accident" to "covered equipment".

The amount we pay under this Expediting Expenses Additional Coverage will not increase the applicable Limit Of Insurance.

**(2) Drying Out Expenses**. We will pay, up to the applicable Limit Of Insurance for **Coverage A – Buildings** or **Coverage B – Business Personal Property**, whichever applies, the direct expenses of drying out wetness in electrical "covered equipment" caused by one of the items listed in Paragraph **1.h.** under **SECTION I — EXCLUSIONS**.

The amount we pay under this Drying Out Expenses Additional Coverage will not increase the applicable Limit Of Insurance.

The water damage exclusions found in Paragraph **1.h.** under **SECTION I — EXCLUSIONS** do not apply to this Drying Out Expenses Additional Coverage.

**(3) Spoilage**. We will pay up to $100,000 for physical loss to "perishable goods" at the described premises due to:

**(a)** Spoilage;

**(b)** Contamination from the release of refrigerant, including but not limited to ammonia; or

**(c)** Any necessary expenses you incur to reduce the amount of loss under this Spoilage Additional Coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this Spoilage Additional Coverage.

Such loss to "perishable goods" must be directly caused by an "accident" to "covered equipment".

The amount we pay under this Spoilage Additional Coverage will not increase the applicable Limit Of Insurance.

**(4) Service Interruption**

**(a)** If Loss Of Income And Extra Expense endorsement is shown in the Declarations, you may extend that insurance to apply to an "accident" to "utility service equipment".

**(b)** You may extend the insurance provided in the Spoilage Additional Coverage above to apply to your loss, damage or expense caused by an "accident" to "utility service equipment".

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(c)** The coverage provided by this Service Interruption Additional Coverage will not apply unless the failure or disruption of service exceeds 24 hours in length, immediately following the "accident". However, once this waiting period is met, coverage will begin at the initial time of the failure or disruption of service.

The amount we pay under this Service Interruption Additional Coverage will not increase the applicable Limit Of Insurance.

**(5) Data Restoration**. We will pay up to $100,000 for the reasonable and necessary cost to research, replace or restore "electronic data" which has been destroyed or corrupted by an "accident" to "covered equipment". To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

If Loss Of Income And Extra Expense endorsement is shown in the Declarations, you may extend that insurance to apply to an "accident" to "covered equipment" caused by an interruption of computer operations due to destruction or corruption of "electronic data". The amount we pay will be subject to the same $100,000 limit of insurance.

The amount we pay under this Data Restoration Additional Coverage will not increase the applicable Limit Of Insurance.

**c. Hazardous Substances Limitation**. The most we will pay for the increased cost to repair or replace Covered Property and the increased cost to clean up or dispose of such property caused by "hazardous substance" contamination resulting from an "accident" to "covered equipment" is $100,000. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in Paragraph **22.b.(3)(b)** above. For the purposes of this limitation, increased cost means costs beyond what would have been required had no "hazardous substance" been involved.

If Loss Of Income And Extra Expense endorsement is shown in the Declarations, any increased loss under such coverage caused by "hazardous substance" contamination to Covered Property resulting from an "accident" to "covered equipment" will be subject to and included in the same $100,000 Limit Of Insurance. For the purposes of this limitation, increased loss means any loss or expense covered under Loss Of Income coverage beyond what would have been sustained or incurred had no "hazardous substance" been involved.

The amount we pay under this Hazardous Substance Limitation will not increase the applicable Limit Of Insurance.

**d. One Loss**. If an initial "accident" causes other "accidents", all will be considered one loss. All "accidents" that are the result of the same event will be considered one loss.

**e.** To the extent of any coverage provided under this Extension Of Coverage:

**(1)** Paragraph **9.** under **Property Not Covered** is deleted.

**(2)** Paragraphs **1.a.** and **1.b.** under **Property Subject To Limitations** are deleted.

**(3)** Paragraph **1.f.** of **SECTION I — EXCLUSIONS** is replaced by the following:

**f.** The failure of power or other utility service supplied to the described premises, if the failure occurs away from the described premises, except as provided in the Extensions of Coverage - Equipment Breakdown.

Failure includes lack of sufficient capacity and reduction in supply.

**(4)** Paragraphs **2.a.** and **2.d.** of **SECTION I — EXCLUSIONS** are deleted.

**(5)** Paragraph **2.l.** of **SECTION I — EXCLUSIONS** is replaced by the following:

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere, except as provided in the Equipment Breakdown Extension Of Coverage;

**(b)** Changes in or extremes of temperature, except as provided in the Equipment Breakdown Extension Of Coverage; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(6)** above results in direct physical loss to Covered Property by an "accident" to "covered equipment" we will pay for that resulting loss.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

CMP-4100

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**f.** We will not pay under this Extension Of Coverage for loss caused by:

**(1)** A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

**(2)** An insulation breakdown test of any type of electrical equipment.

**g.** If Loss Of Income And Extra Expense endorsement is shown in the Declarations, we will not pay for delay in resuming operations due to the need to reconstruct or re-input data or programs on electronic media and records, except as provided in this Equipment Breakdown Extension Of Coverage.

**h.** With respect to Service Interruption Additional Coverage above, we will not pay for an "accident" caused by: fire; lightning; windstorm or hail; explosion (except as specifically provided in Paragraph **1.c.** of **SECTION I — DEFINITIONS**); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

**i.** **Additional Conditions**

**(1)** **Suspension**. When any "covered equipment" is found to be in or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance against loss to any property from an "accident" to that "covered equipment". We can do this by mailing or delivering a written notice of suspension to your address as shown in the Declarations, or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**(2)** **Jurisdictional Inspections**. If any property that is "covered equipment" under this Extension Of Coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

**(3)** **Environmental, Safety And Efficiency Improvements**. If "covered equipment" requires replacement due to an "accident", we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which actual cash value applies.

**23. Ordinance Or Law – Equipment Coverage**

**a.** Subject to Paragraph **b.** below, if a Covered Cause Of Loss occurs to equipment that is Covered

Property, we will pay to repair or replace the equipment as required by law.

**b.** If a Covered Cause Of Loss occurs to refrigeration equipment that is Covered Property, we will pay:

**(1)** The cost to reclaim the refrigerant as required by law;

**(2)** The cost to retrofit the equipment to use a non-CFC refrigerant as required by the Clean Air Act of 1990, and any amendments thereto or any other similar laws; and

**(3)** The increased cost to recharge the system with a non-CFC refrigerant.

The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

**c.** We will not pay under this Extension Of Coverage for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot, virus, bacteria or other microorganisms.

**d.** Loss to the equipment will be determined as follows:

**(1)** If the equipment is repaired or replaced, on the described or another premises, we will not pay more than the lesser of:

**(a)** The amount you actually spend to repair the equipment, but not for more than the amount it would cost to replace the equipment with equipment of the same kind and quality; or

**(b)** The Limit Of Insurance shown in the Declarations as applicable to the covered Building or Business Personal Property.

**(2)** If the equipment is not repaired or replaced, we will not pay more than the lesser of:

**(a)** The actual cash value of the equipment at the time of loss; or

**(b)** The Limit Of Insurance shown in the Declarations as applicable to the Building or Business Personal Property.

**(3)** We will not pay for loss due to any ordinance or law that:

**(a)** You were required to comply with before the loss, even if the equipment was undamaged; and

**(b)** You failed to comply with.

**e.** This Extension Of Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Extension Of Coverage.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

16
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## SECTION I — LIMITS OF INSURANCE

1. Unless otherwise stated, the most we will pay for loss in any one occurrence is the applicable Limit Of Insurance of **SECTION I — PROPERTY** shown in the Declarations.

2. **Inflation Coverage**

   If the Declarations indicate that Inflation Coverage applies then the Limits Of Insurance shown in the Declarations for **Coverage A – Buildings** and **Coverage B – Business Personal Property** will adjust as determined below during the term of this policy at the same rate as the Inflation Coverage Index shown in the Declarations for each coverage.

   The most we will pay for loss in any one occurrence is the adjusted applicable Limit Of Insurance on the date of that occurrence.

   To determine a limit on a given date:

   a. Divide the applicable Inflation Coverage Index on that date by the Inflation Coverage Index as shown in the Declarations or as amended as described below; then

   b. Multiply the resulting factor by the applicable Limit Of Insurance.

   The Limits Of Insurance will not be reduced to less than the amounts shown in the Declarations.

   If during the term of this policy the Limit Of Insurance for **Coverage A – Buildings** or **Coverage B – Business Personal Property** is changed at your request, the applicable Inflation Coverage Index as of the effective date shown in the Declarations is amended to coincide with the effective date of such change.

3. **Business Personal Property Limit – Seasonal Increase**

   a. The Limit Of Insurance for **Coverage B – Business Personal Property** will automatically increase by the percentage shown in the Declarations to provide for seasonal variations.

   b. This increase will apply only if the Limit Of Insurance shown for **Coverage B – Business Personal Property** in the Declarations is at least 100% of your average monthly values during the lesser of:

      (1) The 12 months immediately preceding the date the loss occurs; or

      (2) The period of time you have been in business as of the date the loss occurs.

## SECTION I — DEDUCTIBLES

1. We will not pay for loss in any one occurrence until the amount of loss exceeds the Basic Deductible shown in the Declarations. We will then pay the amount of loss in excess of the Basic Deductible up to the applicable Limit Of Insurance of **SECTION I — PROPERTY**.

2. Regardless of the amount of the Basic Deductible, the most we will deduct from any loss under a coverage for which a Special Deductible is shown in the Declarations

is the amount of the Special Deductible shown for that coverage.

The Special Deductibles will not increase the Basic Deductible shown in the Declarations. The Special Deductibles will be used to satisfy the requirements of the Basic Deductible in the Declarations.

3. No deductible applies to the following Extensions Of Coverage:

   a. Fire Department Service Charge;

   b. Fire Extinguisher Systems Recharge Expense; and

   c. Arson Reward.

## SECTION I — CONDITIONS

1. **Property Loss Conditions**

   a. **Abandonment**

      There can be no abandonment of any property to us.

   b. **Appraisal**

      If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

      (1) Pay its chosen appraiser; and

      (2) Bear the other expenses of the appraisal and umpire equally.

      If there is an appraisal, we will still retain our right to deny the claim.

   c. **Duties In The Event Of Loss**

      (1) You must see that the following are done in the event of loss to Covered Property:

         (a) Notify the police if a law may have been broken.

         (b) Give us prompt notice of the loss. Include a description of the property involved.

         (c) As soon as possible, give us a description of how, when and where the loss occurred.

         (d) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your emergency and temporary repair expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits Of Insurance of **SECTION I — PROPERTY**.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

CMP-4100

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

However, we will not pay for any subsequent loss resulting from a cause of loss that is not a Covered Cause Of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(e)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(f)** As often as may be reasonably required, permit us to inspect the property proving the loss and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(g)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(h)** Cooperate with us in the investigation or settlement of the claim.

**(i)** Resume all or part of your "operations" as quickly as possible.

**(2)** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**d. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**(1)** There has been full compliance with all of the terms of this insurance; and

**(2)** The action is brought within 2 years after the date on which the accidental direct physical loss occurred.

**e. Loss Payment**

In the event of loss covered by this policy:

**(1)** At our option, we will either:

**(a)** Pay the value of lost or damaged property;

**(b)** Pay the cost of repairing or replacing the lost or damaged property;

**(c)** Take all or any part of the property at an agreed or appraised value; or

**(d)** Repair, rebuild or replace the property with other property of like kind and quality.

We will determine **e.(1)(a)** in accordance with the applicable terms of Paragraph **e.(4)** below or any applicable provision which amends or supersedes the terms of Paragraph **e.(4)** below.

**(2)** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**(3)** We will not pay you more than your lawful financial interest in the Covered Property.

**(4)** Except as provided in Paragraphs **(b)** through **(e)** below, we will determine the value of Covered Property as follows:

**(a)** At replacement cost without deduction for depreciation, as of the time of loss, subject to the following:

**i.** We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**1)** The Limit Of Insurance under **SECTION I — PROPERTY** that applies to the lost or damaged property;

**2)** The cost to replace, on the described premises, the lost or damaged property with other property of comparable material, quality and used for the same purpose; or

**3)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the described premises.

**ii.** You may make a claim for loss covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss.

**iii.** We will not pay on a replacement cost basis for any loss:

**1)** Until the lost or damaged property is actually repaired or replaced; and

**2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss.

CMP-4100

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**iv.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(b)** The following property at actual cash value as of the time of loss:

**i.** Property of others, plus the cost of labor, materials, or services furnished or arranged by you on such property. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit Of Insurance.

With respect to this provision, property used in your business that you lease from others or rent from others, or that is loaned to you, is not considered property of others.

Under Personal Property Off Premises and Property Of Others of **SECTION I — EXTENSIONS OF COVERAGE**, the value of property of others in your care, custody or control will be determined in accordance with Paragraph **e.(4)(a)** above;

**ii.** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**iii.** Manuscripts;

**iv.** Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac; and

**v.** Used or second-hand merchandise held in storage or for sale.

We will not pay more for loss in any one occurrence than the lesser of:

**i.** The Limit Of Insurance under **SECTION I — PROPERTY** that applies to the lost or damaged property; or

**ii.** The actual cash value of the lost or damaged property as of the time of loss.

**(c)** Glass at the cost of replacement with safety glazing material if required by law.

**(d)** Tenants' improvements and betterments at:

**i.** Replacement cost in accordance with the terms set forth in Paragraph **(4)(a)iii** above;

**ii.** A proportion of your original cost if you do not make repairs as soon as reasonably possible. We will determine the proportionate value as follows:

**1)** Multiply the original cost by the number of days from the loss to the expiration of the lease; and

**2)** Divide the amount determined in **1)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

**iii.** Nothing if others pay for repairs or replacement.

**(e)** Applicable only to Accounts Receivable:

**i.** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss:

**1)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss occurs; and

**2)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss occurred or for any demonstrated variance from the average for that month.

**ii.** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**1)** The amount of the accounts for which there is no loss;

**2)** The amount of the accounts that you are able to re-establish or collect;

**3)** An amount to allow for probable bad debts that you are normally unable to collect; and

**4)** All unearned interest and service charges.

**(5)** A payment for loss to personal property of others may be provided to you on behalf of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property.

**CMP-4100**

19
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

We will not pay the owners more than their financial interest in the Covered Property.

**(6)** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**(7)** We will pay for covered loss within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and

**(a)** We have reached agreement with you on the amount of loss; or

**(b)** An appraisal award has been made.

**(8)** In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building.  However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits Of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties.

**f.  Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits Of Insurance of **SECTION I — PROPERTY**.

**g.  Vacancy**

**(1) Description Of Terms**

**(a)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **i.** and **ii.** below:

**i.** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough Business Personal Property to conduct customary operations.

**ii.** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**1)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**2)** Used by the building owner to conduct customary operations.

**(b)** Buildings under construction or renovation are not considered vacant.

**(2) Vacancy Provisions**

If the building where loss occurs has been vacant for more than 60 consecutive days before that loss occurs:

**(a)** We will not pay for any loss caused by any of the following even if they are Covered Causes Of Loss:

**i.** Vandalism;

**ii.** Sprinkler leakage, unless you have protected the system against freezing;

**iii.** Building glass breakage;

**iv.** Water damage;

**v.** Theft; or

**vi.** Attempted theft.

**(b)** With respect to Covered Causes Of Loss other than those listed in Paragraphs **(a)i.** through **(a)vi.** above, we will reduce the amount we would otherwise pay for the loss by 15%.

**2.  Property General Conditions**

**a.  Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any **SECTION I** condition at any one or more described premises will not affect coverage at any described premises where, at the time of loss, the breach of condition does not exist.

**b.  Mortgageholders**

**(1)** The term "mortgageholder" includes trustee.

**(2)** We will pay for covered loss to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**(3)** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

CMP-4100

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**(4)** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(a)** Pays any premium due under this policy at our request if you have failed to do so;

**(b)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(c)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**(5)** If we pay the mortgageholder for any loss and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(a)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(b)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**(6)** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(a)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

**(7)** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**c. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**d. Policy Period, Coverage Territory**

Under **SECTION I — PROPERTY**:

**(1)** We cover loss commencing:

**(a)** During the policy period shown in the Declarations; and

**(b)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**(2)** The coverage territory is:

**(a)** The United States of America (including its territories and possessions);

**(b)** Puerto Rico; and

**(c)** Canada.

## SECTION I — DEFINITIONS

**1.** "Accident" means direct physical loss as follows:

**a.** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

**b.** Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;

**c.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

**d.** Loss to steam boilers, steam pipes, steam engines or steam turbines caused by any condition or event inside such equipment; or

**e.** Loss to hot water boilers or other water heating equipment, air conditioning units or refrigerating units caused by any condition or event inside such boilers or equipment.

"Accident" does not mean any defect, programming error, programming limitation, computer virus, malicious code, loss of "electronic data", loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" of any kind.

**2.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production type machinery or equipment.

**3.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**4.** "Covered equipment" means Covered Property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy.

None of the following is "covered equipment":

**a.** Structure, foundation, cabinet, compartment or air supported structure or building;

**b.** Insulating or refractory material;

**c.** Sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;

**d.** Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

**e.** Vehicle, aircraft, floating vessel or any equipment mounted on such vehicle, aircraft or floating vessel.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**CMP-4100**

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

However, any property that is stationary, permanently installed at a described premises and that receives electrical power from an external power supplier will not be considered a vehicle, aircraft or floating vessel;

    **f.** Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

    **g.** Dragline, excavation equipment or construction equipment; or

    **h.** Equipment manufactured by you for sale.

**5.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**8.** "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

**9.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**10.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**11.** "Money" means:

    **a.** Currency, coins and bank notes in current use and having a face value; and

    **b.** Travelers checks, register checks and money orders held for sale to the public.

**12.** "Operations" means your business activities occurring at the described premises.

**13.** "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

**14.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste also includes materials to be recycled, reconditioned or reclaimed.

**15.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**16.** "Sinkhole collapse" means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    **a.** The cost of filling sinkholes; or

    **b.** Sinking or collapse of land into man-made underground cavities.

**17.** "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; "volcanic action"; falling objects; weight of snow, ice or sleet; water damage.

    **a.** Falling objects does not include loss to:

      **(1)** Personal property in the open; or

      **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof, an outside wall, or outside building glass of the building or structure is first damaged by a falling object.

    **b.** Water damage, meaning only abrupt accidental discharge or leakage of water or steam as the direct result of the abrupt rupture of any part of a plumbing system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**18.** "State Farm Companies" means one or more of the following:

    **a.** State Farm Mutual Automobile Insurance Company;

    **b.** State Farm Fire and Casualty Company; and

    **c.** Subsidiaries or affiliates of either **a.** or **b.** above.

**19.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**20.** "Utility service equipment" means non-covered property, of a type that otherwise meets the definition of "covered equipment", that is owned by a utility, landlord, landlord's utility or other supplier who provides you with any of the following services:

    **a.** Internet access, wide area network, telecommunications or data transmission services;

    **b.** Water, electricity, natural gas, steam, heating, air conditioning, refrigeration or compressed air services; or

    **c.** Waste disposal services;

to the described premises.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**CMP-4100**

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

21. "Valuable papers and records" means inscribed, printed or written:

   **a.** Documents;

   **b.** Manuscripts; and

   **c.** Records;

   including abstracts, books, deeds, drawings, films, maps or mortgages.

   But "valuable papers and records" does not mean "money", "securities" or "electronic data".

22. "Volcanic action" means accidental direct physical loss resulting from the eruption of a volcano when the loss is caused by:

   **a.** Airborne volcanic blast or airborne shock waves;

   **b.** Ash, dust or particulate matter; or

   **c.** Lava flow.

   We will not pay for the cost to remove ash, dust or particulate matter that does not cause accidental direct physical loss to Covered Property.

---

## SECTION II — LIABILITY

### Coverage L – Business Liability

**1.** When a Limit Of Insurance is shown in the Declarations for **Coverage L – Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured by counsel of our choice against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" with or without the insured's consent, for any reason and at any time. But:

   **a.** The amount we will pay for damages is limited as described in **SECTION II — LIMITS OF INSURANCE**; and

   **b.** Our right and duty to defend end when we have used up the applicable Limit Of Insurance in the payment of judgments or settlements or medical expenses.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Section II – Supplementary Payments**.

**2.** This insurance applies:

   **a.** To "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of **SECTION II — WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

   **b.** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**3.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of **SECTION II — WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**4.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of **SECTION II — WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **a.** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **b.** Receives a written or verbal demand or claim for damages, or other relief, because of the "bodily injury" or "property damage"; or

   **c.** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**5.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### Section II – Supplementary Payments

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which **Coverage L – Business Liability** for "bodily injury" applies. We do not have to furnish these bonds.

23
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**c.** The premium for bonds to release attachments, but only for bond premiums within our Limit Of Insurance. We do not have to furnish, finance, arrange for, guarantee or collateralize these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** Any cost taxed against the insured in the "suit", except for attorney fees and expenses.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit Of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit Of Insurance.

These payments will not reduce the Limit Of Insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

**3.** So long as the conditions in Paragraph **2.** above are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.** in **Section II – Exclusions**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits Of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable Limit Of Insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **2.f.** above are no longer met.

## Section II – Exclusions

Applicable to **Coverage L – Business Liability**, this insurance does not apply to:

**1. Expected Or Intended Injury**

**a.** "Bodily injury" or "property damage" expected or intended to cause harm as would be expected by a reasonable person; or

**b.** "Bodily injury" or "property damage" which is the result of willful and malicious, or criminal acts of the insured.

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**2. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**a.** That the insured would have in the absence of the contract or agreement; or

**b.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

CMP-4100

24

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**(1)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(2)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**3. Liquor Liability**

**a.** "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**b.** This exclusion applies only if you:

**(1)** Manufacture, sell or distribute alcoholic beverages; or

**(2)** Serve or furnish alcoholic beverages:

**(a)** As a regular part of your business;

**(b)** For a charge whether or not such activity:

**i.** Requires a license; or

**ii.** Is for the purpose of financial gain or livelihood; or

**(c)** Without a charge, if a license is required for such activity.

**4. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**5. Employer's Liability**

**a.** "Bodily injury" to:

**(1)** An "employee" or a former "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

**b.** This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**6. Employment-Related Practices**

**a.** "Bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, malicious prosecution, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of Paragraph **(1)** above.

**b.** This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity;

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

**(3)** Whether the injury causing event described in Paragraph **a.(1)** above occurs before employment, during employment or after employment of that person.

**7. Pollution**

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, spill, release or escape of "pollutants":

**(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(a)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(b)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**CMP-4100**

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**(c)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(a)** Any insured; or

**(b)** Any person or organization for whom you may be legally responsible; or

**(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(a)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(b)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(c)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(5)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**8. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use also includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**a.** A watercraft while ashore on premises you own or rent;

**b.** A watercraft you do not own that is:

**(1)** Less than 51 feet long; and

**(2)** Not being used to carry persons or property for a charge;

**c.** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or any insured;

**d.** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

**e.** "Bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person; or

**f.** "Bodily injury" or "property damage" arising out of:

**(1)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or

CMP-4100

26

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

**(2)** The operation of any of the following machinery or equipment:

**(a)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(b)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**9. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**a.** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**b.** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity or contest.

**10. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**11. Professional Services Or Treatment**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional service or treatment. This includes but is not limited to:

**a.** Legal, accounting or advertising services;

**b.** Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications;

**c.** Supervisory, inspection, architectural or engineering activities;

**d.** Treatment, advice or instruction of any medical, surgical, dental, x-ray or nursing services;

**e.** Treatment, advice or instruction of any health or therapeutic services;

**f.** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**g.** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**h.** Body piercing services;

**i.** Services in connection with the practice of pharmacy;

**j.** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies; and

**k.** Veterinary services or treatments.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**12. Damage To Property**

"Property damage" to:

**a.** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**b.** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**c.** Property loaned to you;

**d.** Personal property in the care, custody or control of any insured;

**e.** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations;

**f.** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it; or

**g.** Covered Property under **SECTION I** of this policy that is held in common by members of a condominium or association.

Paragraph **b.** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **c.**, **d.**, **e.**, and **f.** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **f.** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**13. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**CMP-4100**

27

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**14. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

**15. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**a.** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**b.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**16. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.** "Your product";

**b.** "Your work"; or

**c.** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**17. Personal And Advertising Injury**

**a.** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**b.** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**c.** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**d.** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**e.** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**f.** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**g.** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**h.** Committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **18.a.**, **b.** and **c.** of "personal and advertising injury" under **SECTION II — DEFINITIONS**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

**i.** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**j.** With respect to any loss, cost or expense arising out of any:

**(1)** Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants";

**k.** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**l.** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

**m.** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers; or

**n.** Arising out of a criminal act committed by or at the direction of the insured.

**18. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

CMP-4100

28

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**19. Recording And Distribution Of Material In Violation Of Law**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**c.** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**20. Fungi**

**a.** "Bodily injury", "property damage", or "personal and advertising injury" arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi":

**(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; or

**(2)** At or from any premises, site or location on which any insured or any contractor or subcontractor working directly or indirectly on behalf of any insured is or was at any time performing operations;

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate or dispose of or in any way respond to or assess the effects of "fungi"; or

**(2)** Claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of "fungi".

This exclusion does not apply to any "fungi" that are, are on, or are contained in, a good or product intended for bodily consumption.

## SECTION II — DAMAGE TO PREMISES RENTED TO YOU

Subject to the terms and conditions of **SECTION II** of this coverage form, unless otherwise indicated, we will also pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" to premises rented to you or occupied by you with the owner's permission. This insurance applies if such "property damage" arises out of any insured loss in **SECTION I** of this coverage form.

However, we will not pay for loss to property described in Paragraphs **3.**, **4.** and **5.** under **Coverage B – Business Personal Property** of **SECTION I — PROPERTY**.

The most we will pay for damages because of "property damage" to these premises arising out of any one event, or a series or combination of such events, is the separate Damage To Premises Rented To You limit as described in **SECTION II — LIMITS OF INSURANCE**. This limit applies per "occurrence".

Our limit will not be increased regardless of the number of:

**1.** Insureds;

**2.** Premises insured;

**3.** Claims made or "suits" brought; or

**4.** Persons or organizations making claims or bringing "suits".

**Section II – Exclusions 3.**, **4.**, **5.**, **6.**, **7.**, **8.**, **9.**, **10.**, **12.**, **13.**, **14.**, **15.**, and **16.** do not apply to this coverage.

For the purpose of determining our limit for this coverage, all "property damage" arising out of a continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one "occurrence".

## SECTION II — MEDICAL EXPENSES

### Coverage M – Medical Expenses

**1.** When a Limit Of Insurance is shown in the Declarations for **Coverage M – Medical Expenses** we will pay medical expenses as described below for "bodily injury" caused by an accident:

**a.** On premises you own or rent;

**b.** On ways next to premises you own or rent; or

**c.** Because of your operations;

provided that:

**a.** The accident takes place in the "coverage territory" and during the policy period;

**b.** The expenses are incurred and reported to us within one year of the date of the accident;

CMP-4100

29

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**c.** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require; and

**d.** The injured person, or, when appropriate, someone acting on behalf of that person:

    **(1)** Gives us written proof of claim, under oath if required, as soon as practicable;

    **(2)** Executes authorization to allow us to obtain copies of medical reports or other records; and

    **(3)** Submits to us all information we need to comply with state or federal law.

**2.** We will make these payments regardless of fault. The amount we will pay for medical expenses is limited as described in **SECTION II — LIMITS OF INSURANCE**. We will pay reasonable expenses for:

**a.** First aid administered at the time of an accident;

**b.** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**c.** Necessary ambulance, hospital, professional nursing and funeral services.

## Coverage M – Medical Expenses Exclusions

Under **Coverage M – Medical Expenses**, we will not pay expenses for "bodily injury":

**1.** Excluded under **Section II – Exclusions** applicable to **Coverage L – Business Liability**.

**2.** To any insured, except "volunteer workers".

**3.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**4.** To a person injured on that part of the premises you own or rent that the person normally occupies.

**5.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**6.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**7.** Included within the "products-completed operations hazard".

**8.** Arising out of the use of any "non-owned auto".

## SECTION II — NUCLEAR ENERGY LIABILITY EXCLUSION

Applicable to both **Coverage L – Business Liability** and **Coverage M – Medical Expenses**, this insurance does not apply:

**1.** Under **Coverage L – Business Liability**, to "bodily injury" or "property damage":

**a.** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its Limit Of Liability; or

**b.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    **(1)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    **(2)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**2.** Under **Coverage M – Medical Expenses**, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**3.** Under **Coverage L – Business Liability**, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material" if:

**a.** The "nuclear material":

    **(1)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

    **(2)** Has been discharged or dispersed therefrom;

**b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**c.** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Paragraph **c.** applies only to "property damage" to such "nuclear facility" and any property thereat.

**4.** As used in this exclusion:

**a.** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**b.** "Hazardous properties" include radioactive, toxic or explosive properties;

**c.** "Nuclear facility" means:

    **(1)** Any "nuclear reactor";

    **(2)** Any equipment or device designed or used for:

        **(a)** Separating the isotopes of uranium or plutonium;

        **(b)** Processing or utilizing "spent fuel"; or

        **(c)** Handling, processing or packaging "waste";

**CMP-4100**

30

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008

© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**(3)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(4)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**d.** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**e.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**f.** "Property damage" includes all forms of radioactive contamination of property;

**g.** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**h.** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**i.** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**j.** "Waste" means any waste material:

**(1)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(2)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(1)** and **(2)** of the definition of "nuclear facility".

## SECTION II — WHO IS AN INSURED

**1.** Except for liability arising out of the use of "non-owned autos":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business, other than described in **(2)** through **(5)** below, of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your "members" are also insureds, but only with respect to the conduct of your business. Your "managers" are insureds, but only with respect to their duties as your "managers".

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(5)** A trust, you are an insured. Any executor, administrator, trustee, beneficiary or custodian of your estate or living trust are also insureds, but only while acting within the scope of their duties as such.

**b.** Each of the following is also an insured:

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your "managers" (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(a)** "Bodily injury" or "personal and advertising injury":

**i.** To you, to your partners or members (if you are a partnership or joint venture), to your "members" (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**ii.** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **i.** above; or

**iii.** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **i.** or **ii.** above.

**(b)** "Property damage" to property:

**i.** Owned, occupied or used by,

**ii.** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

CMP-4100

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any "member" (if you are a limited liability company).

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

**(a)** With respect to liability arising out of the maintenance or use of that property; and

**(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

**c.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured but only with respect to liability arising out of the operation of the equipment and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**(1)** "Bodily injury" to a person employed by the same employer of the person driving the equipment; or

**(2)** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**d.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**(2)** There is no coverage for:

**(a)** "Bodily injury" or "property damage" that occurred; or

**(b)** "Personal and advertising injury" arising out of an offense committed;

before you acquired or formed the organization.

**2.** Only with respect to liability arising out of the use of "non-owned autos":

**a.** Each of the following is an insured to the extent set forth below:

**(1)** You;

**(2)** Any partner or "executive officer" of yours but only while such "non-owned auto" is being used in your business; or

**(3)** Any "employee" of yours but only while such "non-owned auto" is being used in your business; and

**(4)** Any other person or organization, but only for their liability because of acts or omissions of an insured under **(1)**, **(2)** or **(3)** above.

**b.** None of the following is an insured:

**(1)** "Employees" with respect to "bodily injury" to any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business;

**(2)** Any:

**(a)** Partner or "executive officer" for any "auto" owned by or registered to such partner or officer or a member of his or her household; or

**(b)** "Employee" for any "auto" owned by or registered to such "employee" or a member of his or her household;

**(3)** Any person while employed in or otherwise engaged in duties in connection with a business of selling, repairing, servicing, storing, or parking "autos" unless that business is yours; or

**(4)** The owner of a "non-owned auto" or any agent or "employee" of any such owner.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION II — LIMITS OF INSURANCE

**1.** The Limits Of Insurance of **SECTION II — LIABILITY** shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Premises insured;

**c.** Claims made or "suits" brought; or

**d.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

32
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

is the **Coverage L – Business Liability** limit shown in the Declarations for the policy period during which the injury or damage first occurs and no additional limits or coverage will be available for the "occurrence" or offense under any additional years that this policy remains in force. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the **Coverage M – Medical Expenses** limit shown in the Declarations.

This limit does not apply to "property damage" to a premises while rented to you or occupied by you with the permission of the owner.

3.  The most we will pay for damages because of "property damage" to a premises while rented to you or occupied by you with the permission of the owner is the Damage To Premises Rented To You limit shown in the Declarations.

4.  Aggregate Limits

    The most we will pay for:

    a.  All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is the Products And Completed Operations Aggregate limit shown in the Declarations.

    b.  All:

        (1)  "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

        (2)  Medical expenses; and

        (3)  "Personal and advertising injury" caused by offenses committed;

        is the General Aggregate limit shown in the Declarations.

        This General Aggregate limit applies separately to each premises not on the same or connecting lots.

        However, this General Aggregate limit does not apply to "property damage" payable under **SECTION II — DAMAGE TO PREMISES RENTED TO YOU** coverage.

The Limits Of Insurance of **SECTION II — LIABILITY** apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

## SECTION II — DEDUCTIBLES

If a deductible amount is shown in the Declarations under **SECTION II — DEDUCTIBLES** our obligation to pay damages on your behalf under the "property damage" liability coverage provided by **Coverage L – Business Liability** applies only to the amount of damages in excess of the deductible shown in the Declarations under

**SECTION II — DEDUCTIBLES**. This deductible amount applies per claim to all damages because of "property damage" sustained by one person or organization as the result of any one "occurrence". This deductible will apply only to the amount of the loss and will not reduce our Limit Of Insurance.

However, the deductible does not apply to "property damage" payable under **SECTION II — DAMAGE TO PREMISES RENTED TO YOU** coverage.

We may pay any part or all of the deductible amount to settle any claim or "suit". Upon notification of the action taken, you will promptly reimburse us for that part of the deductible amount that has been paid by us.

## SECTION II — GENERAL CONDITIONS

1.  **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2.  **Financial Responsibility Laws**

    a.  When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

    b.  With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

3.  **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1)  How, when and where the "occurrence" or offense took place;

        (2)  The names and addresses of any injured persons and witnesses; and

        (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.  If a claim is made or "suit" is brought against any insured, you must:

        (1)  Immediately record the specifics of the claim or "suit" and the date received; and

        (2)  Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

CMP-4100
33
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit Of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Separation Of Insureds**

Except with respect to the **SECTION II — LIMITS OF INSURANCE**, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

## SECTION II — DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury caused by the "bodily injury".

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

**8.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**9.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**10.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**11.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**12.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**13.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**14.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning,

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

geophysical exploration, lighting and well servicing equipment.

16. "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by or registered to your "employees", partners or members (if you are a partnership or joint venture), "members" or "managers" (if you are a limited liability company), "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company), or members of their households, but only while used in your business or your personal affairs.

17. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

18. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

19. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

20. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

21. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

22. "State Farm Companies" means one or more of the following:

a. State Farm Mutual Automobile Insurance Company;

b. State Farm Fire and Casualty Company; and

c. Subsidiaries or affiliates of either a. or b. above.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**23.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**24.** "Temporary worker" means a person who is furnished to:

  **a.** You to substitute for a permanent "employee" on leave; or

  **b.** Meet seasonal or short-term workload conditions.

**25.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**26.** "Your product":

  **a.** Means:

  **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

  **(a)** You;

  **(b)** Others trading under your name; or

  **(c)** A person or organization whose business or assets you have acquired; and

  **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**27.** "Your work":

  **a.** Means:

  **(1)** Work or operations performed by you or on your behalf; and

  **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  **(2)** The providing of or failure to provide warnings or instructions.

---

### SECTION I AND SECTION II — COMMON POLICY CONDITIONS

1. **Changes**

  **a.** This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

  **b.** We may change the Named Insured's policy address as shown in the Declarations and in our records to the most recent address provided to us by:

  **(1)** You; or

  **(2)** The United States Postal Service.

2. **Concealment, Misrepresentation Or Fraud**

  This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

  **a.** This policy;

  **b.** The Covered Property;

  **c.** Your interest in the Covered Property; or

  **d.** A claim under this policy.

3. **Examination Of Your Books And Records**

  We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

4. **Inspections And Surveys**

  **a.** We have the right to:

  **(1)** Make inspections and surveys at any time;

  **(2)** Give you reports on the conditions we find; and

  **(3)** Recommend changes.

  **b.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

  **(1)** Are safe and healthful; or

  **(2)** Comply with laws, regulations, codes or standards.

  **c.** Paragraphs **a.** and **b.** of this condition apply not only to us, but also to any rating, advisory, rate

**CMP-4100**

37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**d.** Paragraph **b.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**5. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**6. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**7. Other Insurance**

**SECTION I — PROPERTY**

If there is other insurance covering the same loss, we will pay only for the amount of covered loss in excess of the amount due from that other insurance, whether you can collect on it or not. However, this insurance is primary and does not contribute with any other insurance for a covered loss to property as described in **Coverage A – Buildings** that you do not own and which is your insurance responsibility according to the terms of a lease or rental agreement. We will decide if our payment for loss will be made to you or to the owner of the property. But we will not pay more than the applicable Limit Of Insurance of **SECTION I — PROPERTY** coverages shown in the Declarations.

**SECTION II — LIABILITY**

If other valid and collectible insurance is available to the insured for a loss we cover under **SECTION II — LIABILITY**, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That insures for accidental direct physical loss; or

**(ii)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to paragraph **8.** of **Section II – Exclusions**.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under **Coverage L – Business Liability** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the **SECTION II — LIABILITY** Limits Of Insurance shown in the Declarations.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**d. Other Insurance Provided By Us**

The total insurance provided under **Coverage L – Business Liability** and any other policy written by us will not exceed the highest Limit Of Insurance applicable under any one of the policies written by us.

**8. Premiums**

**a.** The first Named Insured shown in the Declarations:

**(1)** Is responsible for the payment of all premiums; and

**(2)** Will be the payee for any return premiums we pay.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**b.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**c.** Unless otherwise provided by an alternative payment plan in effect with "State Farm Companies", you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

**(1)** Paid to us prior to the anniversary date; and

**(2)** Determined in accordance with Paragraph **b.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**d.** Undeclared exposures or change in your business operation, acquisition or use of premises may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**e.** The premium for this policy may vary based upon the purchase of other insurance from the "State Farm Companies".

**9. Premium Audit**

**a.** This policy is subject to audit if a premium designated as an estimated premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**b.** Premium shown in this policy as estimated premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the estimated and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**10. Transfer Of Rights Of Recovery Against Others To Us**

**a.** Applicable to **SECTION I — PROPERTY**:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**(1)** Prior to a loss to your Covered Property.

**(2)** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**(a)** Someone insured by this insurance;

**(b)** A business firm:

**i.** Owned or controlled by you; or

**ii.** That owns or controls you; or

**(c)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**b.** Applicable to **SECTION II — LIABILITY**:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**11. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**12. Conformity To State Law**

When a provision of this policy is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

**13. Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

**a.** Such provision will remain in full force to the extent not held invalid or unenforceable; and

**b.** All other provisions of this policy will remain valid and enforceable.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
© Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**EXHIBIT 2**



ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**State Farm**

AIKEN BLVD                                                                                   40-P869-2K2

| | | |
|---|---|---|
| Insured: | AIKEN BLVD | |
| Property: | 52 AIKEN BLVD | |
| | WARRENVILLE, SC 29851-0729 | |
| Business: | 803-392-7088 | |
| Type of Loss: | Wind Damage | |
| Deductible: | $1,000.00 | |
| Date of Loss: | 9/27/2024 | |
| Date Inspected: | 12/3/2024 | |

| | |
|---|---|
| Estimate: | 40-P869-2K2 |
| Claim Number: | 40P8692K2 |
| Policy Number: | 99BWP6169 |
| Price List: | SCAI28_SEP24 |
| | Restoration/Service/Remodel |

## Summary for Coverage A - Dwelling - 35 Windstorm and Hail

| | |
|---|---|
| Line Item Total | 2,129.35 |
| Material Sales Tax | 19.18 |
| | |
| Replacement Cost Value | 2,148.53 |
| Less Depreciation (Including Taxes) | (50.71) |
| Less Deductible | (1,000.00) |
| | |
| Net Actual Cash Value Payment | $1,097.82 |

## Maximum Additional Amounts Available If Incurred:

| | | |
|---|---|---|
| Total Line Item Depreciation (Including Taxes) | 50.71 | |
| Replacement Cost Benefits | | 50.71 |
| Total Maximum Additional Amount Available If Incurred | | 50.71 |
| Total Amount of Claim If Incurred | | $1,148.53 |

Wipf, Lonnie

866-787-8676 x 11561

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| **Ceiling** | | | | | | | |
| 1. Scrape the ceiling & prep for paint | | | | | | | |
| | 144.00 SF | 0.85 | 0.12 | 122.52 | | | 122.52 |
| 2. R&R 1/2" drywall - hung, taped, floated, ready for paint | | | | | | | |
| | 40.00 SF | 3.14 | 2.21 | 127.81 | | | 127.81 |
| 3. R&R Batt insulation - 6" - R19 - unfaced batt | | | | | | | |
| | 40.00 SF | 1.56 | 2.91 | 65.31 | | | 65.31 |
| 4. Seal/prime (1 coat) then paint (1 coat) the surface area | | | | | | | |
| | 60.00 SF | 1.25 | 1.06 | 76.06 | 10/15 yrs Avg. | (50.71) 66.67% | 25.35 |
| 5. Seal & paint acoustic ceiling (popcorn) texture | | | | | | | |
| | 144.00 SF | 1.63 | 4.49 | 239.21 | | | 239.21 |
| **No damage to walls & floor** | | | | | | | |
| 6. Floor protection - plastic and tape - 10 mil | | | | | | | |
| | 144.00 SF | 0.37 | 1.38 | 54.66 | | | 54.66 |
| 7. Haul debris - per pickup truck load - including dump fees | | | | | | | |
| | 1.00 EA | 133.95 | 0.00 | 133.95 | | | 133.95 |
| 8. Contents - move out then reset | | | | | | | |
| | 1.00 EA | 67.51 | 0.00 | 67.51 | | | 67.51 |
| **Totals: Boutique Storage** | | | 12.17 | 887.03 | | 50.71 | 836.32 |

Area Totals:  Main Level

| | | |
|---|---|---|
| 384.00  SF Walls | 144.00  SF Ceiling | 528.00  SF Walls and Ceiling |
| 144.00  SF Floor | 160.44  Total Area | 48.00  LF Floor Perimeter |
| 144.00  Floor Area | 50.67  Exterior Perimeter of Walls | 48.00  LF Ceil. Perimeter |
| 456.00  Exterior Wall Area | | 384.00  Interior Wall Area |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total:  Main Level** | | | 12.17 | 887.03 | | 50.71 | 836.32 |

**Storage Area 2**

| | | |
|---|---|---|
| 0.00  SF Walls | 0.00  SF Ceiling | 0.00  SF Walls & Ceiling |
| 0.00  SF Floor | 0.00  SF Short Wall | 0.00  LF Floor Perimeter |
| 0.00  SF Long Wall | | 0.00  LF Ceil. Perimeter |

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

## State Farm

AIKEN BLVD

40-P869-2K2

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 9. R&R Sheathing - plywood - 1/2" CDX | | | | | | | |
| | 64.00 SF | 2.54 | 4.81 | 167.37 | | | 167.37 |

Includes: Plywood, nails or staples, and installation labor. Labor cost to remove plywood and to discard in a job-site waste receptacle.

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 10. Contents - move out then reset | | | | | | | |
| | 1.00 EA | 67.51 | 0.00 | 67.51 | | | 67.51 |
| Totals: Storage Area 2 | | | 4.81 | 234.88 | | 0.00 | 234.88 |

### Office

| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
|---|---|---|
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 11. R&R Suspended ceiling tile - 2' x 4' | | | | | | | |
| | 10.00 SF | 2.48 | 1.10 | 25.90 | | | 25.90 |

Includes: Suspended ceiling tile panels and installation labor. Labor cost to remove 2' x 4' suspended ceiling tile panels and to discard in a job-site waste receptacle

| | | | TAX | RCV | | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Totals: Office | | | 1.10 | 25.90 | | 0.00 | 25.90 |

### Office Bathroom

| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
|---|---|---|
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

**CONTINUED - Labor Minimums Applied**

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| | | | | | CONDITION | DEP % | |
| 13. Drywall labor minimum | | | | | | | |
| | 1.00 EA | 326.14 | 0.00 | 326.14 | | | 326.14 |
| 14. Insulation labor minimum | | | | | | | |
| | 1.00 EA | 126.19 | 0.00 | 126.19 | | | 126.19 |
| * 15. Roofing labor minimum | | | | | | | |
| | 1.00 EA | 261.92 | 0.00 | 261.92 | | | 261.92 |
| 16. Acoustic ceiling tile labor minimum | | | | | | | |
| | 1.00 EA | 260.57 | 0.00 | 260.57 | | | 260.57 |
| **Totals: Labor Minimums Applied** | | | **0.00** | **974.82** | | **0.00** | **974.82** |
| **Line Item Totals: 40-P869-2K2** | | | **19.18** | **2,148.53** | | **50.71** | **2,097.82** |

**Grand Total Areas:**

| | | |
|---|---|---|
| 384.00 SF Walls | 144.00 SF Ceiling | 528.00 SF Walls and Ceiling |
| 144.00 SF Floor | | 48.00 LF Floor Perimeter |
| | | 48.00 LF Ceil. Perimeter |
| | | |
| 144.00 Floor Area | 160.44 Total Area | 384.00 Interior Wall Area |
| 456.00 Exterior Wall Area | 50.67 Exterior Perimeter of Walls | |

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

# EXHIBIT 3

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

**Sworn Statement in
Proof of Loss**

Insurer: State Farm Insurance Companies             Claim Number: 40P8692K2

                                                    Policy Number: 99BWP6169

I/We, Reggie and Hanna Rearden submit the following and listed attachments as my proof of loss.

1.  Estimate and Photos from: Mission Property Loss Consultants

2.  GASC Property Solutions invoice and supporting documentation

3.  Boujee Barn Sales History

4.  Business Contents

The date of the loss was: Sep 27th 2024.  I believe the cause of loss was: Hurricane

When this loss occurred, my interest in the damaged property for which claim is being made was: **Owner**

All others (individuals, mortgagee, lien holders, etc.) who have an interest in the damaged property are named and their interest is indicated after their name:

1)  Pinnacle Bank ISAOA ATIMA, Mortgage.

I/we **do not have other insurance** which applies to the structure and/or personal property or business personal property covered by this policy. There have been **no changes** in title to the property since the application for this policy was made.

The address of any damaged building is: 52 Aiken Blvd LLC, Warrenville SC, 29851

I am making a claim for: $   191,606.06 (RCV) for the damaged dwelling under coverage (A).

I am making a claim for: $        892.91 (RCV) for the damaged other structures under coverage (B).

I am making a claim for: $     27,706.20 (RCV) for the damaged contents under coverage (C).

I am making a claim for: $     54,646.03 (RCV) for the loss of income under coverage.

I am making a claim for: $      5,443.20 (RCV) for the loss of use under coverage.

Signed by:

Reggie Rearden                    3/10/2025

007CF6688AAA498...

Signature                         Date

Signed by:

Hanna Rearden                     3/10/2025

4686FF97E9ED4C3...

Signature                         Date

** The insured(s) reserves all rights he/she/they may have under the insurance policy, including, but not limited to, supplementing the claim and/or filing additional Proof of Losses, should such cause arise. This Proof of Loss does not address hidden damages and does not include any unknown damages or complications or additional costs that may be associated with any repair/replacement of the damages to the insured property. If this Proof of Loss does not meet the requirements of the Policy, you are instructed to respond within fifteen (15) days from receipt of same or any deficiencies will be considered waived.

# EXHIBIT 4

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 **State Farm**®

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

May 19, 2025

AIKEN BLVD
PO BOX 729, WARRENVILLE, SC, 29851-0729

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA  30348-6169
Fax 844 236 3646

RE:  Claim Number:        40-P869-2K2
     Policy Number:       99-BW-P616-9
     Location of
      Insured Property:  52 AIKEN BLVD, WARRENVILLE, SC, 29851-2983
     Type of Policy:      BUSINESSOWNERS COVERAGE FORM
     Date of Loss:        September 27, 2024

Dear Reginald Reardon:

Thank you for meeting with me on May 08, 2025, when we discussed the damage to your property.

Based upon the results of our discussions, site inspection, and investigation, it was determined there was no storm damage to the roof and no coverage for rotted wood and mold.

Damage resulting from this cause of loss is not covered by your policy.  Please refer to the following policy provisions:

## SECTION I — COVERED CAUSES OF LOSS

We insure for accidental direct physical loss to Covered Property unless the loss is:

**1.** Excluded in **SECTION I — EXCLUSIONS**; or

**2.** Limited in the **Property Subject To Limitations** provision.

## SECTION I — EXCLUSIONS

**1.** We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

**j.  Fungi, Virus Or Bacteria**

   **(1)** Growth, proliferation, spread or presence of "fungi" or wet or dry rot; or

40-P869-2K2
Page 2
May 19, 2025

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

    **(2)** Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease; and

    **(3)** We will also not pay for:

        **(a)** Any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by "fungi", wet or dry rot, virus, bacteria or other microorganism;

        **(b)** Any remediation of "fungi", wet or dry rot, virus, bacteria or other microorganism, including the cost or expense to:

            **i.** Remove the "fungi", wet or dry rot, virus, bacteria or other microorganism from Covered Property or to repair, restore or replace that property;

            **ii.** Tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot, virus, bacteria or other microorganism; or

            **iii.** Contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the "fungi", wet or dry rot, virus, bacteria or other microorganism; or

        **(c)** The cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of "fungi", wet or dry rot, virus, bacteria or other microorganism, whether performed prior to, during or after removal, repair, restoration or replacement of Covered Property.

    This exclusion does not apply if "fungi", wet or dry rot, virus, bacteria or other microorganism results from an accidental direct physical loss caused by fire or lightning.

**2.** We do not insure under any coverage for loss whether consisting of, or directly and immediately caused by, one or more of the following:

    **l.** **Other Types Of Loss**

        **(1)** Wear and tear;

        **(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

        **(4)** Settling, cracking, shrinking or expansion;

        **(7)** The following causes of loss to personal property:

            **(a)** Dampness or dryness of atmosphere;

            **(b)** Changes in or extremes of temperature; or

            **(c)** Marring or scratching.

    But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in an accidental direct physical loss by any of the "specified causes of loss" or by building glass breakage, we will pay for the loss caused by that "specified cause of loss" or by building glass breakage.

    **p.** **Continuous Or Repeated Seepage, Discharge Or Leakage Of Water**

    Continuous or repeated seepage, discharge or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

40-P869-2K2
Page 3
May 19, 2025

**3.** We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in Paragraphs **1.** and **2.** immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   **a.  Weather Conditions**

   Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** and **2.** above to produce the loss.

   **c.  Work**

   Faulty, inadequate or defective:

   **(1)** Planning, zoning, development, surveying, siting;

   **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **(3)** Materials used in repair, construction, renovation or remodeling; or

   **(4)** Maintenance;

   of part or all of any property (including land, structures or improvement of any kind) on or off the described premises.

   But if accidental direct physical loss results from items **3.a.**, **3.b.**, or **3.c.**, we will pay for that resulting loss unless the resulting loss is itself one of the losses not insured in **SECTION I** of this coverage form.

This denial involves the coverages of this policy only.  If you have any additional information you would like us to consider, please forward it to us immediately.  **SECTION I — CONDITIONS**

   **d.  Legal Action Against Us**

   No one may bring a legal action against us under this insurance unless:

   **(1)** There has been full compliance with all of the terms of this insurance; and

   **(2)** The action is brought within three years after the date on which the accidental direct physical loss occurred.

This Company does not intend, by this letter, to waive any policy defenses in addition to those stated above, and reserves its right to assert such additional policy defenses at any time.

If you have any additional information regarding your claim which has not been previously considered, or if you desire any additional explanation regarding this matter, please contact me at **.

Sincerely,

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

40-P869-2K2
Page 4
May 19, 2025


Shaun Doucet
Independent adjuster
866-787-8676 x.12733

State Farm Fire and Casualty Company

**

cc:      **

Take advantage of our self-service options
Go to statefarm.com® to easily review claim status, update communication and claim payment
preferences, and many other insurance services.

ELECTRONICALLY FILED - 2025 Sep 16 10:54 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | | IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT 2025CP0202475 |
| COUNTY OF AIKEN | | |

AIKEN BLVD LLC,            )
                                )
        Plaintiff,        )
                                )        **AMENDED**
v.                             )        **SUMMONS**
                                )
                                )
STATE FARM FIRE AND CASUALTY    )
COMPANY,                   )
                                )
        Defendant.     )

TO:  THE ABOVE-NAMED RESPONDENT – STATE FARM FIRE AND CASUALTY COMPANY

      YOU ARE HEREBY SUMMONED and required to answer the Complaint

contained herein, a copy of which is herewith served upon you, and to serve a copy of your Answer to

this Complaint upon the subscriber, at the address shown below, within thirty (30) days after service

hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default

will be rendered against you for the relief demanded in the Complaint.

                       Respectfully submitted,

                       **HOWARD STALLINGS LAW FIRM**

                       By: /s/Brooke E. Webber
                       Brooke E. Webber (State Bar No. 106810)
                       5410 Trinity Road, Suite 210
                       Raleigh, North Carolina 27607
                       Telephone: (919) 821-7700
                       E: bwebber@howardstallings.com
                       *Attorney for Plaintiffs*

September 16, 2025.

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE CIRCUIT COURT FOR THE |
| | SECOND JUDICIAL CIRCUIT |
| COUNTY OF AIKEN | 2025CP0202475 |

AIKEN BLVD LLC,                                    )
                                                  )
           Plaintiff,                  )
                                                  )
v.                                                )          **COMPLAINT**
                                                  )   **(JURY TRIAL DEMANDED)**
                                                  )
STATE FARM FIRE AND CASUALTY                      )
COMPANY,                                          )
                                                  )
           Defendant.                  )

**NOW COMES** Plaintiff, by and through undersigned counsel, to complain of the Defendant by alleging and saying as follows:

## PARTIES

1. Plaintiff is a domestic Limited Liability Company with its registered agent located in Aiken County, South Carolina. Plaintiff's members are Hanna Readen and her husband, Reginald ("Reggie") Parnell Rearden IV.

2. Upon information and belief, Defendant is a corporation organized in the State of Illinois, which at all times relevant to this Complaint, was transacting substantial business and licensed to write insurance within the State of South Carolina, including Aiken County.

## JURISDICTION AND VENUE

3. The Court has personal jurisdiction pursuant to S.C. Code Ann. § 36-2-802.

4. Defendant has been properly served and brought before the Court pursuant to Rule 4 of the South Carolina Rules of Civil Procedure.

5. Venue is proper in Greenville County pursuant to S.C. Code Ann. §15-7-30.

---

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

1

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

## FACTUAL ALLEGATIONS

6.     Plaintiff is the owner of real property located at 52 Aiken Blvd, Warrenville, South Carolina 29851 (hereinafter, the "Property") and has been since 2017. The Property is a 3893 square foot business with 5 tenants operating out of various suites.

7.     Prior to Hurricane Helene, the Property's roof was found to be in great condition and upon information and belief, was previously inspected by Defendant's underwriting department prior to Defendant issuing a policy of insurance. Plaintiff timely made all payments under the Policy and fulfilled its obligations.

8.     On September 27, 2024, the Property suffered a loss as a result of Hurricane Helene, leading to immediately observable damage at the Property, including visible water damage coming into the building through the roof and ceiling.

9.     One of Plaintiff's tenants, Boujee Barn Boutique, which is primarily owned by Hanna Rearden, had kept inventory inside of the Property that was destroyed as a result of the Hurricane Loss. Defendants informed Plaintiff and Hanna Rearden that Plaintiff's Policy would cover any losses Boujee Barn would sustain, that Boujee Barn did not need a separate policy of insurance, and should a loss occur, Boujee Barn would simply make a claim under Plaintiff's Policy.

10.     At the time of the Loss, Plaintiff was insured by the Defendant under Insurance Policy 99-BW-P616-9. A copy of the Policy and Declarations are attached hereto as **Exhibit 1**.

11.     Plaintiff immediately reported the claim, and Defendant assigned the Claim as Claim Number 40-P869-2K2.

12.     Plaintiff also immediately began mitigating its damages by purchasing industrial circular fans to dry out the excessive water damage that occurred as a result of Hurricane Helene.

13.     On October 7, 2024, Defendant scheduled an inspection of the Property to occur on

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

October 26, 2024. Confusingly, despite that Reggie and Hanna Rearden were the points of contact for Plaintiff, Defendant contacted Reggie Rearden's mother, Tonya Rearden, to schedule this inspection. Reggie Rearden's mother has no interest in Plaintiff Aiken Blvd LLC and has never had an interest in Aiken Blvd LLC.

14.     On October 25, 2024, two days prior to the scheduled inspection at the Property, Defendant stated that it needed to cancel and reschedule the upcoming inspection. At this time, Defendant *again* improperly contacted Tonya Rearden to discuss the Claim.

15.     On November 14, 2024, Defendant rescheduled the Property's inspection for November 16, 2024.

16.     However, on November 16, 2024, Defendant contacted Plaintiff that Defendant needed to reschedule.

17.     On November 26, 2024, Defendant contacted Plaintiff to reschedule the inspection for November 30, 2024.

18.     On November 30, 2024, Defendant reschedule the inspection until December 2, 2024. Defendant eventually conducted the inspection on December 3, 2024.

19.     On December 3, 2024, for the first time since the September loss, Defendant inspected the Property.

20.     After the inspection, Defendant provided Plaintiff a $2,129.35 estimate finding Wind Damage to the Property.

21.     After Plaintiff's $1,000.00 deductible and depreciation were applied, Defendant issued Plaintiff a check in the amount of $1,097.82 for damage to Plaintiff's ceiling, storage room, office, exterior walls, and for roofing labor. A copy of Defendant's Estimate and Check proving coverage are attached hereto as **Exhibit 2**.

---

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

3

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

22.     Plaintiff immediately explained that the amount issued woefully undervalued the Claim. At that time, Plaintiff informed Defendant of the significant water damage and it believed there were significant safety concerns at the Property, including that the roof would cave in or that mold would begin growing at the Property if Defendant continued to undervalue the Claim.

23.     Plaintiff also informed Defendant that Plaintiff's tenant had several inventory items damaged and was unable to reopen since a large hole in the Property's ceiling was immediately above the tenant's inventory stock room.

24.     Shortly after issuing payment and providing coverage for the Claim, Defendant emailed Plaintiff stating that there was no damage to Plaintiff's Property.

25.     Plaintiff was extremely confused given that Defendant had already afforded coverage under the Policy, so Plaintiff asked for a second inspection.

26.     In response to Plaintiff's request for a second inspection, Defendant stated it would only be wiling to reinspect the Property if Plaintiff hired a contractor to submit photos of the damage and an itemized estimate for repairs.

27.     Despite being confused, Plaintiff complied with Defendant's requests and hired a contractor, who submitted photographs to Defendant that same month.

28.     In response, Defendant informed Plaintiff that Plaintiff's roof was related to wear and tear despite that Defendant had previously approved Plaintiff's roof for repair.

29.     Plaintiff repeatedly requested that Defendant conduct a reinspection; however, Defendant refused.

30.     As a result, Plaintiff was forced to hire a Licensed Public Adjuster, Mission Property Loss Consultants, to assist Plaintiff with the Claim.

31.     In February 2025, Plaintiff, through their Public Adjuster, followed up with Defendant

---

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

4

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

as to the status of the Claim. However, Defendant would not respond.

32.     In March 2025, Plaintiff, through their Public Adjuster, followed up with Defendant as to the status of the Claim. At that time, Plaintiff submitted a sworn statement of Proof of Loss for $191,606.06 for damage under Coverage A, $892.91 damage under Coverage B, $27,706.20 for contents under Coverage C, $54,646.03 for loss income, and $5,443.20 for loss of use. A copy of the Proof of Loss is attached hereto as **Exhibit 3**. However, Defendant would not respond.

33.     In April 2025, Plaintiff, through their Public Adjuster, followed up with Defendant as to the status of the Claim. However, Defendant would not respond.

34.     On May 8, 2025, Defendant finally agreed to reinspect Plaintiff's Property, but Defendant did not bring an engineer, a roofer, or any other person with Defendant to the inspection. At that time, Plaintiff, through its Public Adjuster, reiterated to Defendant that, prior to Hurricane Helene, the Property had no leaks and there was no prior roof damage.

35.     On May 22, 2025, Defendant contacted Plaintiff, directly, to inform Plaintiff that Defendant was denying Plaintiff's *entire* Claim due to no storm related damages. At that time, Plaintiff reminded Defendant that Defendant was supposed to be communicating with Plaintiff through its Public Adjuster. A copy of the denial is attached as **Exhibit 4**.

36.     Defendant significantly and intentionally undervalued Plaintiff's Claim.

37.     Defendant was informed that there were serious safety concerns with the Property, and that Plaintiff was concerned that there would be mold growth or interior water damage at the Property.

38.     Plaintiff repeatedly followed up with Defendant, but Defendant refused to respond.

39.     Plaintiff has continued to mitigate its damages by tarping the roof; however, Defendant's refusal to pay has caused significant safety concerns for Plaintiff and its tenants.

40.     Defendant had already provided coverage and acknowledged that the Plaintiff's loss

---

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

was covered under the Policy, yet Defendant refused to reasonably adjust the Claim.

41. Defendant has placed its own financial gain ahead of the Plaintiff's interests.

42. Defendant has failed to conduct a full, fair, and prompt investigation of Plaintiff's Claim and misrepresented Policy terms and conditions.

43. Defendant refused to pay Plaintiff in a timely manner for items covered under the Policy despite previously acknowledging that Plaintiff was entitled to the funds. Defendant previously recognized that Plaintiff has a valid Claim, but Defendant refused to pay.

44. Defendant refused to settle the Claim with Plaintiff in good faith.

45. Defendant refused to act diligently and in good faith in effecting settlement within Policy limits.

46. Plaintiff relied upon Defendant, including to fairly and promptly adjust Plaintiff's Claim and provide payment.

47. Due to Defendant's actions and inactions, Defendant has compelled Plaintiff to institute this litigation and hire a licensed public adjuster to recover amounts due under the Policy.

48. Plaintiff repeatedly provided all information and documentation relevant to Plaintiff's contention that Defendant has drastically undervalued the Claim and/or provided payment for covered items under the Policy. Such information was not reasonably considered by the Defendant. As such, Plaintiff continues to expend time, energy, and resources to provide estimates, reports, and further information in support of the Claim. However, Defendant has shown no interest in properly reviewing the Policy and facts of the Claim to provide coverage for an otherwise covered Loss.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

49. Plaintiff realleges and incorporates the preceding allegations as if set forth verbatim herein.

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

50.    The Policy is and was a valid and enforceable contract between Plaintiff and Defendant.

51.    Defendant breached this contract by failing to provide the benefits, coverage and payments due thereunder to Plaintiff, including Defendant's failure and refusal to pay the Claim is unreasonable.

52.    As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered monetary damages in an amount equal to the payments due under the Policy, as well as consequential and incidental damages.

53.    Plaintiff is informed and believes it is entitled to statutory attorney's fees.

54.    Plaintiff's damages are in excess of this Court's jurisdictional threshold.

## SECOND CLAIM FOR RELIEF
### (Bad Faith)

55.    Plaintiff realleges and incorporates the preceding allegations as if set forth verbatim herein.

56.    That this cause of action is brought for actual, consequential, incidental, and punitive damages due to the above-described actions of the Defendant and the bad faith refusal to properly adjust and pay Plaintiff's Claim for benefits under the contract of insurance.

57.    That issuance of the policy of insurance to Plaintiff and the subsequent renewals thereof created a contractual relationship between the parties.

58.    That the Defendant, therefore, is subject to the implied-in-law duty to act fairly and in good faith in order not to deprive Plaintiff of the benefits of the Policy of insurance, in order not to cause Plaintiff additional damages, and in order not to delay and/or hinder payment of Plaintiff's claim.

59.    That Defendant breached the duty and covenant of good faith and fair dealing in the following particulars:

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

7

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

a.     in misrepresenting pertinent facts and/or Policy provisions relating to the coverages provided by the policy of insurance;

b.     in providing deceptive and/or misleading information with respect to coverages provided by the policy of insurance;

c.     in failing to acknowledge with reasonable promptness pertinent communications from its insured with respect to the claims arising under the Policy of insurance;

d.     in failing to adopt, implement, and/or follow reasonable standards for the prompt investigation and settlement of Plaintiff's claims arising under the Policy of insurance;

e.     in invoking or threatening to invoke policy defenses not in good faith and/or with a reasonable expectation of prevailing with respect to the policy defenses but for the primary purpose of discouraging or reducing Plaintiff's Claim;

f.     in misrepresenting that Plaintiff's claims were not covered by its policy of insurance and attempting to claim that the cause of Defendant's damages was the result of an uninsured cause and/or event;

g.     in delaying and/or refusing to pay said claim by alleging non-coverage to its insured when Defendant knew or should have known that Plaintiff's claim was covered;

h.     in engaging in a course of conduct which was for the purpose of wearing down its insureds in order to get its insured to abandon the Claim;

i.     knowingly misrepresenting to Plaintiff pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages;

j.     failing to fully communicate all benefits due to Plaintiff under the Policy of insurance;

k.     failing to acknowledge with reasonable promptness pertinent communications with respect to a claim arising under its policies;

l.     failing to fully investigate coverage; and/or

m.     not attempting in good faith to effect prompt, fair, and equitable settlement of

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

8

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

Plaintiff's claim submitted to it in which liability had become reasonably clear,

60.   That as a direct result of the above-described acts or omissions, Plaintiff has incurred actual, consequential, and incidental damages.

61.   That Plaintiff is informed and believes that it is entitled to actual, consequential, incidental, and punitive damages on their Second Cause of Action, together with pre-judgment interest on the amount due under the Policy of insurance from the date its claim should have been paid.

62.   Defendant's acts and omissions show reckless indifference to Plaintiff's rights, oppression, insult, rudeness, caprice and willfulness.

63.   As a result of the acts and omissions of Defendant, Plaintiff has sustained damages and losses and are entitled to recover punitive and compensatory damages in an amount to be proven at trial.

64.   Plaintiff's damages exceed this Court's jurisdictional threshold.

### PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays the Court for relief as follows:

1.   That Plaintiff have and recover of Defendant a sum equal to the benefits due under the Policy as well as actual, incidental, consequential damages to be proven at trial;

2.   That Plaintiff be awarded statutory attorneys' fees to the extent allowed by law, including through S.C. Code § 38-59-40;

3.   That Defendant be taxed with prejudgment interest;

4.   That judgment for punitive damages in an amount sufficient to deter the Defendant from engaging in similar conduct in the future;

5.   That all issues of fact be tried by a jury; and

**HOWARD STALLINGS LAW FIRM**
**Attorneys at Law**

9

6.       For such other, further and different relief as the Court deems just and proper.

This the 15th day of September, 2025.

**HOWARD STALLINGS LAW FIRM**

By: _/s/ Brooke E. Webber_____
     Brooke E. Webber (State Bar No.: 106810)
     Post Office Box 12347
     Raleigh, North Carolina 27605
     T: (919) 821-7700; F: (919) 821-7703
     E: bwebber@howardstallings.com
     *Counsel for Plaintiff*

ELECTRONICALLY FILED - 2025 Sep 16 3:32 PM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

ELECTRONICALLY FILED - 2025 Sep 30 11:22 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475

STATE OF SOUTH CAROLINA,    )

COUNTY OF  AIKEN    )

    )

AIKEN BLVD LLC    )
        Plaintiff(s) )

vs.    )

STATE FARM FIRE AND CASUALTY CO.  )
        Defendant(s). )

IN THE ☐ FAMILY COURT
☑ COURT OF COMMON PLEAS
☐ MAGISTRATE COURT

SECOND     JUDICIAL CIRCUIT

AFFIDAVIT OF SERVICE

FILE NO: 2025CP0202475

PERSONALLY PREPARED BEFORE ME, the undersigned deponent, who being duly sworn

says that (s)he served the  Amended Summons and Complaint     in this action
(Describe document(s) served)

on  State Farm Fire and Casualty Company     by delivery to
(Name of party served)

☑  South Carolina Department of Insurance     personally;
(Name of party served)

☑  Michael Wise ,     the  Agency Directory   of the party served,
(Name of person served)    (Note relationship to party)

and a person of discretion residing at the residence of the party served;

☐     ,     the     of     
(Name of person served)    (Title)    (Name of corporate party served)

and leaving with ☑(him) ☐(her) a copy at  1201 Main Street, Suite 1000    
(Street address)

in  Columbia      Richland     County, South Carolina,
(City or Town)    County

on  September 23, 2025     at      o'clock

that deponent knows the person so served, and that deponent is not a party of this action, is not less than

eighteen (18) years of age and has no interest therein or connection therewith.

☐ Unable to locate and serve the above process on the defendant after diligent efforts to do so.
The process is returned unexecuted.

Sworn to and Subscribed before me    )
this 30th day of September, 2025    )
    )
_Rita Caquias_    )
Notary Public for North Carolina    )
    )
My Commission expires 12/15/28    )    Signature of Deponent

Entered in the Sheriff's Service Book on     

Book      Page      Number     

SCCA 402 (Revised 01/08)

[Notary seal: RITA CAQUIAS — NOTARY PUBLIC — WAKE COUNTY, N.C.]



# South Carolina
# Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

September 23, 2025

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
STATE FARM FIRE AND CASUALTY CO
c/c Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On September 23, 2025, I accepted service of the attached Amended Summons, Complaint and Exhibits on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to ccrooks@doi.sc.gov.** When replying, please refer to File Number 205976, <u>Aiken Blvd LLC v. State Farm Fire and Casualty Company</u>, 2025-CP-02-02475.

By: _[signature]_

Anthony Ibarra
Associate General Counsel
(803)737-6039

Sincerely Yours,

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:     Brooke E. Webber Esq.
        Howard Stallings Law Firm
        5410 Trinity Road, Suite 210
        Raleigh, NC      27607

ELECTRONICALLY FILED - 2025 Sep 30 11:22 AM - AIKEN - COMMON PLEAS - CASE#2025CP0202475